been disposed. of in the case of *Wilkinson v. State*, decided at the present term, (and which immediately follows this case), and it is unnecessary to consider them again.

For the errors pointed out the case must be reversed and remanded.

# Wilkinson *et al.* v. The State.

## *Indictment for Murder*.

1. *Organization of jury in capital case; when mistake no ground for quashing venire.*—Where a special jury law (Special law for Mobile county, Acts 1886-87, p. 208) provides that the jury commissioners, after selecting certain number of persons to discharge the duties of jurors and entering their names on the jury roll, shall write each name on a separate piece of paper, and on each slip bearing the name of the resident of the city shall be written the word "City," and on those bearing the names of persons living outside of the city, the word "County," and that the slips so written upon shall be placed in the city and circuit court jury boxes in certain proportions, from which, respectively, the jurors to serve in said courts shall be drawn, it is no ground for quashing a special *venire* in a capital case that two of the slips drawn from the boxes bore nothing but the names of the jurors, and several others bore in addition to the names of the jurors only the letters "Co." Especially is this true when one of the sections of the jury law under which the jurors are drawn, provides that the provisions of said act, in relation to selecting, drawing and summoning said jurors shall be construed as merely directory.

2. *Conviction of murder in the first degree; sentence of the court.*—Where, on a trial under an indictment for murder, a jury returns a verdict for murder in the first degree, fixing the punishment of the defendant at imprisonment for life in the penitentiary, a sentence of the court, which, after reciting that the defendant had been found guilty of murder in the first degree, reads: "It is therefore considered and is so adjudged that you be imprisoned in the penitentiary of the State for life," &c , is sufficient and not invalid ; though the judgment and sentence would have been fuller and more complete if it had read: "It is therefore considered and is so adjudged that you are guilty of murder in the first degree, and it is further considered and adjudged that you be confined in the penitentiary of the State for life," &c.

3. *Evidence; admissibility of diagrams or maps.*—Diagrams or maps illustrating the scene of the transaction and the relative locations of objects or the position of parties inquired about, are admissible in

[Wilkinson v. The State.]

evidence if proved to be correct; and where, on a trial under an in-
dictment for murder, the solicitor for the State had the defendant,
while testifying as a witness in his own behalf, to make a diagram
showing the relative positions of the parties at the time of the con-
flict which resulted in the homicide, for which the defendant was being
tried, which diagram was used by the defendant in his testi-
mony, and embodied his admissions of the relative positions of the
parties implicated at the time of the killing, and the only inaccuracy
of the diagram suggested by the defendant was that he was not cer-
tain it was correct as to the distance between the parties, there is no
error in allowing the State, on rebuttal, to introduce the diagram as
a part of the evidence in the case as testified to by the defendant.

4. *Same; relationship of witnesses to deceased can not be proved.*—On
a trial for murder, after the State has closed its evidence in rebuttal,
it is not permissible for the defendant to introduce evidence to prove
relationship between the State's witnesses and the deceased; and
the ruling of the trial court refusing to allow such evidence is free
from error.

5. *Charge of the court to the jury; erroneous when it seeks to have the
court pass upon the effect of evidence.*—Where two persons are jointly
indicted and tried for murder, a charge requested by the defendants,
which instructs the jury that certain language of one of them to the
other would not justify the jury in finding that the speaker intended
the other to assail and kill the deceased unlawfully, is erroneous,
in that it seeks to have the court pass upon the effect of evidence,
and such charge is properly refused.

APPEAL from the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

The appellants, James Wilkinson and Daniel Wilkin-
son, were indicted and tried for the murder of Edward
Chastang, and were convicted of murder in the first de-
gree and sentenced to the penitentiary for life. The rul-
ings of the court upon the motion to quash the *venire* are
sufficiently shown in the opinion.

The evidence for the State, as shown by the bill of ex-
ceptions, tended to show that the deceased, Edward
Chastang and his brother, Frank Chastang, met the de-
fendants in a public road in Mobile county, and that
Edward Chastang was assaulted by Daniel Wilkinson,
who pulled him from his horse to the ground, and while
lying on the ground under said Daniel Wilkinson, James
Wilkinson, the son of Daniel Wilkinson, shot Edward
Chastang with a pistol, from the effects of which wound
he died in a few hours. There was evidence tending to
show that Edward Chastang was armed with a pistol,

and other evidence tending to show that he was not armed at the time of the assault upon him by Daniel Wilkinson. The evidence for the State further tended to show that both the defendants had made threats against the deceased. The evidence for the defendants tended to show that when the Chastangs and Wilkinsons met in the road, Edward Chastang, the deceased, cursed Daniel Wilkinson, and assaulted him with a knife, cutting him in the back; that thereupon, Daniel Wilkinson called to his son, James Wilkinson, for aid, saying to him, that he was being cut to death by Edward Chastang; that thereupon Frank Chastang placed himself between James Wilkinson and the contestants, cursing James Wilkinson, and fired at him; that James Wilkinson immediately returned the fire, the ball missing Frank Chastang, but struck Edward Chastang and killed him.

The other facts of the case are sufficiently shown in the opinion. Upon the introduction of all the evidence, the defendants requested the court to give, among other charges, the following written instruction, and duly excepted to the court's refusal to give the same: "Dan Wilkinson can not be rightfully convicted on proof of killing of Ed Chastang by Jim Wilkinson only, unless Dan Wilkinson co-operated in or expressly or impliedly requested or induced or aided Jim Wilkinson to assail or kill Edward Chastang unlawfully, and if the jury believe from the evidence that Dan Wilkinson did not kill Edward Chastang, but that James Wilkinson did kill him, then the jury could not rightfully convict Dan Wilkinson of murder or manslaughter in any degree, unless Dan Wilkinson expressly or impliedly induced or requested or aided James Wilkinson to assail or kill said Chastang unlawfully; and if the jury also believe from the evidence, that Dan Wilkinson was engaged in a fight, unarmed, with Edward Chastang, and was being cut in the back by said Chastang, and during this time called to his son, James Wilkinson, come here Jim he is cutting me to death, this alone would not justify the jury in finding that the defendant, Dan Wilkinson, intended that James Wilkinson should assail or kill said Edward Chastang unlawfully. Such language is susceptible of more than one construction, and according to the circumstances under which it was used, and might be eithe innocent or wrongful; and the burden is on the State so

[Wilkinson v. The State.]

far as Dan Wilkinson is concerned, to show that Dan Wilkinson, expressly or impliedly requested or induced Jim Wilkinson to assail or kill Edward Chastang unlawfully, or co-operated with him therein before Dan Wilkinson can rightfully be found guilty on proof of killing by James Wilkinson."

BROWN & TONSMEIER, for appellant.

WILLIAM C. FITTS, Attorney-General, for the State.— 1. The ruling of the court in refusing to quash the *venire* upon motion of the defendant was free from error. *Cole v. State*, 105 Ala. 76; *Jones v. State*, 104 Ala. 30; *Gibson v. State*, 89 Ala. 121.

The diagram introduced in evidence was admissible. *E. T. V. & G. R. R. Co. v. Watson*, 90 Ala. 45; *Shook v. Pate*, 50 Ala. 91.

The charge requested by the defendant was erroneous, and properly refused.—*Perry v. State*, 87 Ala. 30; *Smith v. State*, 89 Ala. 73.

HARALSON, J.—The special law of Mobile county, (Acts of 1886–87, section 5, p. 203) provides, that the jury commissioners, charged with the duty of selecting the sixteen hundred persons prescribed, most competent in their opinion to discharge the duties of grand and petit jurors, shall, upon the completion of a roll or list of jurors, cause to be prepared slips of strong white paper of equal size and texture on which shall be written, in a plain and distinct hand, the name of every person who has been entered on said roll—one person's name being entered on each slip—and that all persons on said roll, resident within the city of Mobile, shall have written on the slips bearing their names, the word "City," and all persons who reside outside of the city limits, shall have written on the said slips bearing their names, the word "County;" and one-fourth of all the names drawn by lot shall be placed in a box, called the circuit court jury box, and the remaining three-fourths, in what is called the city court jury box, from which boxes grand and petit jurors are drawn in the manner directed for these courts, respectively.

2. There was evidence tending to show, that two o, the slips drawn from the city court jury box in this casef

[Wilkinson v. The State.]

had on them nothing except the names of the jurors, and did not have in connection with the names, the words, "city" or "county," to designate the residence of the two jurors; that nine of the 100 slips drawn, had on them, together with the names of the jurors, the letters, "Co.," but none of the nine slips had on them, the word "county," and that the other 89 had on them, with the names of the jurors, the word "city."

Based on the requirements of the statute, for these reasons, after each side had announced ready for trial, the defendant moved the court to quash the *venire*. The motion was properly overruled. It was the duty of the commissioners, certainly, to comply with the requirements of the statute in making up the jury box—to write on the slips, not only the names of the jurors, but the word "city" or "county," to designate the residence of the juror, whether living in the city or out of it, in the county; but, if they failed to discharge this duty, and made up the box, with the requisite number of names, written on slips of paper as required, and failed to write "city" or "county" against the names of two of the jurors, that fact would not invalidate their whole work in filling the boxes, making it impossible to draw a jury therefrom at all. Such a calamity for so trivial a reason, was never within the intention of the legislature. The 14th section of the statute in question provides, however, that the provisions of the act, in relation to the selecting, drawing and summoning of jurors, whether grand or petit, shall be construed as merely directory, so far as the validity of the organization of such juries, shall be concerned. The defendants' motion as applicable to the selecting, drawing and summoning of said jurors, for the failure of the two slips to have the words "city" or "county," written upon them, was rightfully overruled.—(*Gibson v. The State,* 89 Ala. 126; *Jones v. The State,* 104 Ala. 30. Nor, was there any merit in the objection to the panel, that opposite the names of a number of jurors, the abbreviation, "Co." for county was employed, instead of the word written in full. While it is a bad practice, on the part of the officers, not to comply literally with the statute, in the preparation of these slips, yet, the objection here raised is too technical to meet approval. The letters, "Co.," as used on these slips did not mislead defendant and his counsel.

They knew well enough, as well as did every other person, what they stood for.—*Jones v. The State*, 104 Ala. 30, *supra*; *Coles v. The State*, 105 Ala. 76.

3. The objection that the defendants had not had served on them, one entire day before the trial, a copy of the *venire* drawn in their case, as required by law, is without merit. It rested alone upon the attempted showing, that the name of one of the jurors for the week on the *venire* for this trial, was not the name of said juror, as shown by the slip on which his name was written. The court inspected the list and ruled, that the name on the list was the same as it appeared on the slip—G. T. Duvall. The slip and list have been certified to us, and there is no disagreement. Indeed, it is difficult to see how the point was ever made.

4. The verdict of the jury was for murder in the first degree, as to both defendants, with the award of life punishment in the penitentiary, and the sentence of the court, as it first appeared on the minutes, as to each separately, after reciting that he had been found guilty of murder in the first degree, reads : "It is, therefore, considered, and is so adjudged, that you be confined in the penitentiary of the State for life," &c. This was sufficient, without more.—*Gray v. The State*, 55 Ala. 86; *Wright v. The State*, 103 Ala. 95. In the last named case will be found very full directions in respect to sentences to be pronounced in criminal cases. If these directions are followed, no mistakes can arise in the making and recording of sentences. The court, no doubt, out of an abundance of caution, two days after pronouncing judgment and during the term, amended the judgment entry of the sentence, by adding after the words, "that you " and before the succeeding words, "be confined," &c., the additional words, *"are guilty of murder in the first degree, and it is further considered and adjudged that you."* The omission of these words in the beginning, did not render the sentence insufficient or void, but it would have been fuller and more complete, if they had first appeared therein.

5. While the defendants were testifying, the solicitor had each of them to make a diagram, showing the relative positions of the parties at the time of the conflict. The defendant, Daniel Wilkinson, stated that he was not positive as to the exact distances, as he was not able to

see distinctly because of the position in which he was being held by Edward Chastang, and that he could judge of the distances of the other parties,—Frank Chastang and James Wilkinson,—from him, only by sound. The solicitor in rebuttal, offered this diagram, to which the defendants objected, because the witness had testified, that he was not positive it was accurate. James Wilkinson in making his diagram stated, that he was not certain that it was correct as to distances, and and the defendants objected to its introduction, because of that statement. It will be observed, that the only inaccuracy suggested by either witness as to the diagrams, was that they were not certain that they were correct as to distances between the respective parties.

The rule, as stated in *Campbell v. The State*, 23 Ala. 83, is that a witness may use a plat, diagram or map, made in any way, to explain or make himself intelligible to a jury, though it can not go to them as evidence.—*Shook v. Pate*, 50 Ala. 92. But, where the diagram is shown to be correct, there can be no objection to it as evidence. *Bridges v. McClendon*, 56 Ala. 335; *Clement v. Pearce*, 63 Ala. 284; *Humes v. Bernstein*, 72 Ala. 546. In this instance, the diagrams were made by the defendants themselves. They embody their representations and admissions of the relative situation of the parties implicated at the time of the killing. They were requested by the State for this purpose, and the defendants did not pretend or state that they were inaccurate in this respect. They each said they were not certain or positive as to distances. Having made these diagrams, presumably, as fairly and correctly for themselves as they could, there was no error in allowing them to be placed before the jury by the State as a part of the evidence as testified by the defendants.—*E. T., V. & G. R. R. Co. v. Watson*, 90 Ala. 45.

6. There was no error in the refusal of the court to allow the defendants, after the State had closed its evidence in rebuttal, to introduce evidence to prove relationship between the State's witnesses and deceased.

7. The charge requested by defendants, bad on several grounds, was subject to the glaring vice of seeking to have the court pass on the effect of evidence, competent alone for the consideration of the jury.

Affirmed.