(46 South. 566.)

No. 16,991.

GRAZIANO v. CITY OF NEW ORLEANS.

(May 11, 1908.)

INTOXICATING LIQUORS—LICENSE — REVOCATION.

 A building which has been constantly and for years used as a barroom, does not lose or change its identity, within the meaning of Ordinance 14,629, C. S. (of the city of New Orleans), by reason of its being rendered temporarily uninhabitable, pending repairs necessitated by a fire, and whilst the city license is still outstanding; and the action of the council in revoking the license on that ground has no better basis to rest on than if it had assumed the place to be a nuisance when such was not the case.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Walker Byers Sommerville, Judge.

Action by Vito Graziano against the city of New Orleans. Judgment for plaintiff, and defendant appeals. Affirmed.

GRAZIANO v. CITY OF NEW ORLEANS.

Henry Garland Dupré, Asst. City Atty., for appellant. Zengel, Thomas & Suthon, for appellee.

## Statement.

MONROE, J. Plaintiff is lessee of a two-story, double-tenement, frame building, fronting on the east side of Franklin street, at the corner of Felicity, and since 1896 (save as will be hereafter stated) has conducted a grocery store and barroom in the Felicity street side, whilst residing in the other side and renting the second floor of the entire building. The room in which the business has been carried on has a width approximately of 12 feet on Franklin, by a depth of 25 feet on Felicity street, and has been used for the same purpose for many years; the grocery having been carried on in the Franklin street end, and the bar, in the rear, with a small lattice partition to indicate the line between. On June 23, 1907, a fire broke out in the grocery and extended to the bar, and, through a connecting door, into the apartment fronting on Franklin street, occupied by plaintiff as a residence. The damage was mainly confined to the interior and contents of the rooms mentioned, though by finding their way through the front and side openings the flames did some injury to the weather-boarding of the lower story of the business side of the house.

The character of the damage is described by the fire marshal as follows:

"Well, in so far as concerns the use of anything in the building—that is, that portion of it which had been occupied as a barroom and grocery—it was beyond all use.

"There was no value to that at all. While the articles and things remained in the place, still they had been more or less burned by the fire, or smoked and damaged in such a way that they were no longer of any use, with the exception of some barrels of wine and whisky that were there, which was not a loss. The grocery part of the building, where the fire had originated, seemed to have suffered the worse attack by the fire. * * * Well, this fire blasted the entire lower portion on that side; that is to say, the portion that was occupied as a

grocery and barroom. The barroom was at the furthest end of the building, and that was not as much damaged as that part which had been occupied as a grocery. Still it was damaged to such an extent that it could no longer be used as a barroom."

The work of repairing the place was begun soon after the fire, and was completed within six weeks, when plaintiff resumed his business, and thereupon a protest on behalf of the board of trustees of Memorial Presbyterian Church (which church is on the west side of Franklin street, about 225 or 250 feet from the premises in question) was presented to the mayor and council, alleging in part as follows, to wit:

"On the night of June 22d * * * the barroom of Mr Vito Graziano, located * * * within 300 feet of the church, was destroyed by fire. The place was deserted by Mr. Graziano until about August 15th, when it was reopened by him, without filing a new petition with the city council, and he is now operating a barroom, in violation of law; the identity of the place as a barroom having been destroyed."

The protest so presented was referred to the committee on public order, which inquired into the matter, and—

"then decided to confer with the city attorney, who was sent for, and after a discussion with said official it was ordered, on motion * * * and upon the recommendation of the city attorney, that it be declared that the barroom * * * had lost its identity, and the clerk directed to prepare the necessary ordinance revoking the license issued to Vito Graziano."

Some two weeks later, however, the committee reconsidered the action so taken, and after a second hearing reported unfavorably on the protest, and directed the clerk to return the ordinance revoking plaintiff's license to the council without action, which was done. The council, nevertheless, adopted an ordinance (No. 4,913) reading as follows:

"Whereas, after investigation by the committee on public order, it appears that the barroom established at the corner of S. Franklin and Felicity streets has lost its identity; therefore: Be it ordained * * * that the city treasurer be, and is hereby, ordered * * * to annul * * * the city license issued by him to Vito Graziano. * * * *"

Thereupon plaintiff instituted this suit, enjoining the enforcement of the ordinance, and, the injunction having been perpetuated, the city has appealed.

## Opinion.

In 1896 the city council adopted an ordinance (No. 12,636, C. S.) prohibiting the establishment of barrooms, save upon permission granted by it, on written application, accompanied by the written consent of "a majority of the bona fide property holders, within 300 feet" and also accompanied by a certificate from the city engineer showing the ownership of property, etc.

In 1897 another ordinance (No. 13,674, C. S.) was passed, providing that:

"Hereafter, no permit shall be granted to operate any barroom within 300 feet of a church or school."

In 1898 the council adopted still another ordinance (No. 14,629, C. S.) reading:

"Resolved, that it is the sense of the council that in all cases where a building has been constantly occupied as a barroom, and has not changed its identity since the time it was so occupied, it shall not be necessary for any person or persons, who may desire to establish a barroom in said building, to obtain a permit from the council in accordance with the existing laws and ordinances: Provided, that there shall be no protest filed in the meantime with the council against the reopening and operating of a barroom in said building."

As we have seen, the evidence shows that the building here in question has been used for many years as a barroom. It appears to have been so used before the complaining church · was built, and it does not appear that it was ever used for any other purpose. At the date of the fire, whilst it was being repaired, when plaintiff reopened it, and when this suit was instituted and tried, it was licensed as a barroom. It is true that for a short time, the place was uninhabitable by reason of the fire; but neither the building, nor the stock, nor the fixtures were destroyed, and both the owner and the lessee, acting under and with reference to the license issued by the city, and still outstanding, proceeded without delay to take the necessary steps to re-establish the business. Under the circumstances, whilst we will not undertake to say exactly what conditions. are needed, within the meaning of Ordinance No. 14,629, C. S., to change the identity of a building which has been constantly occupied as a barroom, we are of opinion that the proposition that the identity of the building in question was changed by reason of the facts stated is untenable. It might, with the same propriety, be said that a church,. hotel, or dwelling house loses its identity whenever temporarily closed for repairs, or by reason of some fortuitous occurrence, or because a citizen and his family are attending a picnic or a funeral. On the other hand, if a building does not lose its identity under such circumstances, then the action of the council, in so holding, and in revoking its license on that ground, is arbitrary, discriminatory, and hence illegal, having no better basis to rest on than if it had assumed the place to be a nuisance when such was not the case—a condition concerning which this. court has said:

"What are nuisances per se is well established by jurisprudence and in the works of text-writers, and it is equally well established that, when a thing or act complained of is a nuisance per se, it may be so declared by ordinance and abated. But where the thing or act complained of is not a nuisance per se, and may not be a nuisance at all, depending on the facts, there is no authority vested in a town council to enact an ordinance declaring it a nuisance and ordering its suppression, and such an ordinance is void and without effect." De Blanc & Landry v. Mayor and Board, etc., 106 La. 683, 31 South. 312, 56 L. R. A. 285.

Judgment affirmed.