(136 So. 831)

## MILAM v. STATE.

### 7 Div. 797.

Court of Appeals of Alabama.

June 9, 1931.

Rehearing Denied June 30, 1931.

Frank B. Embry, of Pell City, and S. W. Tate, of Anniston, for appellant.

Thos. E. Knight, Jr., Atty. Gen., for the State.

BRICKEN, P. J.

In this case, in the court below, the jury returned a general verdict against this appellant of guilty, as charged in the indictment. Whereupon the court sentenced him to an indeterminate term of imprisonment in the penitentiary. Judgment of conviction was pronounced and entered from which this appeal was taken.

The indictment contained two counts, in proper form and substance, and charged in the first count that this appellant did distill,

make, or manufacture alcoholic, spirituous, malted, or mixed liquors or beverages, a part of which was alcohol, etc., and in the second count that he had in his possession, a still, etc., to be used for the purpose of manufacturing prohibited liquors or beverages.

■ The corpus delicti was fully proven by the undisputed evidence, which disclosed that this appellant and one Grady Shepperd were at a still of large capacity, and in full operation, with whisky running therefrom at the time of the arrival of the officers. Shepperd ran and escaped, but this appellant was arrested at the still. The still was filled with mash and, as stated, was in full operation at the time, and some eight or ten gallons of whisky already made.

Appellant, through counsel, earnestly insists that as a matter of law from the whole evidence he was entitled to the affirmative charge, the insistence being predicated on the insufficiency of the evidence to carry the case to the jury so far as he was concerned. This is the principal insistence on this appeal to effect a reversal. Appellant admits his presence at the still, and when testifying in his own behalf stated he had been at the still only thirty or forty minutes before the officers arrived; that he went there to buy a gallon of whisky from Shepperd; that he was up above the still dam, but wasn't doing anything about the dam, and on cross-examination he stated: "The best I remember I had a shovel in my hand." He also testified: "I did not have any interest in or dominion over that still. I did not do anything around the still. I was up above the still dam but I wasn't doing anything there in the way of fixing that dam or opening up there to assist in that still in the manufacture of liquor."

The three state witnesses, however, testified to the contrary. Witness Honeycutt testified: "I saw the defendant (appellant) at the still with a shovel and he was damming up a branch. There was a little dam in the branch and Mr. Milam was up here from the still damming that up. They were getting the water from the pond." Continuing, this witness said: "There was a dam across the branch and the pipe went through under that dam up to where the water was and defendant was there shovelling and making that dam higher." This witness gave other testimony of like import, and described the setup of the still, and the connection with the dam and ponded water in the operation of the still.

Witness H. S. Gambriel, for the state, testified: "I know defendant (appellant) and saw him at a still in August '28 and the still was in operation. When I saw the defendant it seems like he had a short handle shovel in his hand standing in the branch as far as from me to the wall over there, and there was a dam in the branch and a pipe from the dam to the condenser of the still. It seems like defendant raked a little in the branch with the shovel. The water was running through that pipe down to the condenser." On cross-examination, he stated: "Defendant was about as far as from here to the table by the wall over there and appeared to be raking something out of the branch."

State witness Thomas testified: "I have known the defendant forty years and I saw him on August 23rd, 1928, at a still and he was shovelling out the branch between the still and the spring, and there was a dam on that branch, and there was a pipe that led from the still up to the dam to carry water and water was running through the pipe. Defendant was just above the dam."

■ Certainly, from the foregoing, it cannot be doubted that the quoted testimony tended to show that this appellant was actively engaged in assisting in the operation of the still in question. The defendant having denied that he committed the acts as testified to by the state's witnesses, makes a conflict in the testimony, and thus a jury question. We cannot accord to the insistence that he was entitled to the affirmative charge; under the evidence, the court was without authority to direct a verdict. Bearden's Case, 22 Ala. App. 545, 117 So. 603, and cases cited.

From what has been said, refused charges one and five were properly refused.

Refused charges 2 and F. were fairly and substantially covered by given charge A. and by the oral charge.

Refused charges D. and E. were covered by given charges 2, 3, 7, and 10.

■ The one remaining question is raised by the insistence of appellant to the effect: "The judgment entry in this case does not show a conviction of appellant." In this we do not accord. The judgment in this case is as follows:

"On this 29 day of January 1930 comes the State by its solicitor and the defendant in his own proper person and attended by counsel, and upon hearing the indictment against him read in open court, pleads not guilty thereto, thereupon comes a jury of good and lawful men to-wit; J. T. Windsor and eleven others and after being duly and legally impannelled, sworn according to law upon their oaths do say, 'We, the jury find the defendant guilty.' The State of Alabama vs. Jim Milam, * * * and now upon this the 29th day of January 1930 the defendant being in open court, and being asked by the Court if he had anything to say why the sentence of the law should not now be pronounced upon him says nothing. It is therefore considered by the Court and it is the judgment and sentence of the court, that the said defendant,

'Jim Milam, be imprisoned in the Penitentiary of the State of Alabama for a term of. not less than one year nor more than one year and thirty days."

In said judgment, as will be seen, there appears the verdict of the jury finding the defendant guilty; this is followed by a full and complete sentence of the defendant by the court, and though the court did fail to enter up a formal adjudication of guilt, yet this was not necessary where there is, as here, a judgment containing a proper sentence in compliance with the verdict; for from such sentence a judgment of guilt will be implied. This has been expressly. held innumerable times by this court and the Supreme Court. Only a few of these cases will be here cited. Ex parte Roberson, 123 Ala. 103, 26 So. 645, 82 Am. St. Rep. 107; Wilkinson v. State, 106 Ala. 23, 28, 17 So. 458; Thames v. State, 12 Ala. App. 307, 68 So. 474; Carmichael v. State, 213 Ala. 264, 104 So. 638; Ex parte State (Hardeman v. State), 202 Ala. 694, 81 So. 656; Talbert v. State, 140 Ala. 96, 37 So. 78, and cases cited.

There is no analogy in the judgment of conviction in this case to that in the case of Wells v. State, 19 Ala. App. 403, 97 So. 681, on rehearing, which case is cited and relied upon by appellant. No elaboration or discussion of the inaptness of the citation of the Wells Case need be indulged.

We find no reversible error in any ruling of the court. The record is also regular and without error.

Affirmed.