30 So.2d 479

**ALLEN v. STATE.**

7 Div. 887.

Court of Appeals of Alabama.

March 11, 1947.

Rehearing Denied April 8, 1947.

Rains & Rains, of Gadsden, for appellant.

A. A. Carmichael, Atty. Gen., and Jas. T. Hardin, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant was by a jury found guilty on three counts of a solicitor's complaint charging him with selling, offering for sale, or possessing with intent to sell, adulterated milk. A fine of $500 was assessed against appellant by the jury, to which the court added the costs of this proceeding.

The evidence introduced by the state tended to show that the appellant operated a dairy farm in Etowah County. The milk produced on appellant's dairy farm was sold by him to the Tro-Fe Dairy Company in Gadsden, which company was engaged in the business of pasteurizing milk for sale to the public. Employees of the company collected the milk from appellant's farm every other day. On November 16, 1945 five or six cans of milk, bearing appellant's mark, were picked up at appellant's barn by W. T. Phillips, a company employee, and by him delivered to the plant of the company. There it was delivered to another employee of the company, J. M. Bragg, and by him poured into an empty weighing tank. After all of the milk from appellant's cans had been poured into the tank a sample of the milk was taken therefrom by W. A. Corley, an agent of the Pure Foods Division of the Alabama State Department of Agriculture and Industries. Mr. Corley testified that the sample taken was, by him, sealed, labeled, and carried to Birmingham where he expressed it to the laboratory of the Alabama State Department of Agriculture and Industries, located in Montgomery. E. K. Tucker, Principal Agricultural Chemist for said department received said sample, broke the seal on the container, and analyzed same. His analysis showed said sample of milk contained 12% added water. All of the witnesses for the state testified that no water was added to the milk at any time it was in their respective custodies.

For the appellant two employees testified that they milked the herd and placed the milk in the cans on November 15, 1945, which were picked up by the Tro-Fe Dairy Company the following day, and that they did not add any water to the milk. They further tesified that appellant was not present during the time they handled the milk.

The appellant himself testified that he was away from his farm on November 15, 1945, and did not return until late that night. He denied that he added any water to the milk or had any knowledge of water being added to the milk.

As originally filed the solicitor's complaint contained two counts, which were as follows:

"Count 1. The State of Alabama, by its Deputy Solicitor, complains of Luther Allen, whose name to the Deputy Solicitor is otherwise unknown, that within twelve months before the commencement of this prosecution, he did manufacture for sale therein, had in possession with intent to sell, offered or exposed for sale, sold or delivered an article of food which was adulterated within the meaning of Article 18, Title 2, Code of Alabama 1940, said food, purported to be milk, being adulterated in that a substance, namely, water, had been substituted wholly or in part for said food, contrary to law.

"Count 2. The State of Alabama, by its Deputy Solicitor, further complains of Luther Allen, whose name to the Deputy Solicitor is otherwise unknown, that within twelve months before the commencement of this prosecution, he did sell an article of food, namely, milk, which was adulterated in that it contained added water, contrary to Title 2, Section 306 of the Code of Alabama 1940."

After the jury was struck the solicitor amended the complaint by adding Count 3, which was as follows:

"Count 3. The State of Alabama, by its Deputy Solicitor, further complains that the

defendant did sell adulterated milk or cream contrary to law and in violation of Section 188, Title 2, of the 1940 Code of Alabama, contrary to law and against the peace and dignity of the State of Alabama."

The appellant objected to the addition of the amendment to the complaint on the grounds that it was made after the jury was struck, and that it showed on its face that the statute of limitations had run against the misdemeanor charged in said count.

■ The court overruled said objection. Count 3 amending the complaint apparently was added because of a misrecital or erroneous recital of the code sections mentioned in Counts 1 and 2 of the complaint. Omitting such code references, Counts 1 and 2 of the complaint substantially set forth that the appellant did, within 12 months before the beginning of this prosecution, sell milk which had been adulterated by added water. The misrecital of the code sections did not render the complaint void, if the facts set forth constituted an offense under any statute.

See 42 C.J.S. Indictments and Informations, § 139, and cases there cited. Section 347 of Title 13, Code of Alabama 1940, sets forth that a solicitor's complaint in a county court may be substantially in the following form: "The State of Alabama, by its solicitor complains of C. D. (the defendant), that within twelve months before the commencement of the prosecution he did (here describe the offense as in cases of indictment).

G. H. Solicitor."

The misrecitals of the code sections, in view of the full information of the nature of the offense disclosed by Counts 1 and 2, may in our opinion be rejected as surplusage. As stated in Harper v. U. S., 5 Cir., 27 F.2d 77, 79, "The statement that the facts violate a certain section of the statute is nothing more than the pleader's conclusion, which may or may not be correct, and neither adds nor detracts from the allegations."

Section 188 of Title 2, Code of Alabama 1940, is as follows: "No person shall sell any adulterated milk or cream, or any milk or cream having therein any foreign substance or coloring matter, or any chemicals or preservatives, whether for the purpose of increasing the quantity of milk or cream or for improving its appearance, or for the purpose of preserving the condition or sweetness thereof, or for any other purpose whatsoever."

Section 304 of Title 2, Code of Alabama 1940, covers all adulterated food, and is as follows: "No person within this state shall manufacture for sale therein, have in possession with intent to sell, offer or expose for sale, sell, or deliver any article of food or drugs which is adulterated or misbranded within the meaning of this article." Both sections carry the same penalties for breaches thereof.

In our opinion, Counts 1 and 2 of the complaint, treating the references to the code sections appearing respectively in each count as surplusage, adequately informed the accused of the offense he was charged with committing, and the court properly overruled the demurrers thereto.

■ No necessity arises for considering the court's action in permitting the state to amend the complaint by filing Count 3, as no demurrer was filed to this count, and the jury returned a general verdict of guilty. Under such circumstances the general verdict will be referred to the good counts and the conviction will be sustained. Rowland v. State, 55 Ala. 210; May v. State, 85 Ala. 14, 5 So. 14; Levoy v. State, 28 Ala. App. 94, 179 So. 391; Dorgan v. State, 29 Ala.App. 362, 196 So. 160.

■ In several grounds of his motion to set aside the verdict appellant sets out that the counts of the complaint do not charge the appellant with knowingly and intentionally placing water in the milk.

In Smith v. State, 223 Ala. 346, 136 So. 270, 271, the accused had been convicted of giving false measures of gasoline in violation of Section 243, Agricultural Code, 1927, Section 601, Title 2, Code of Alabama 1940. No knowledge or intent was charged to the accused. Writing to this point Anderson, C. J., said: "Generally speaking, when an act is prohibited and made punishable by statute only, the statute is to be construed in the light of the common law and the existence of a criminal intent is to be regarded as essential, even when in terms not required. The Legislature, however,

may forbid the doing of an act and make its commission criminal without regard to the intent or knowledge of the doer, and, if such legislative intention appears, the courts must give it effect, although the intent of the doer may have been innocent. This rule has been generally, though not quite universally, applied to the enforcement of statutes passed in aid of the police power of the .state where the word 'knowingly' or other apt words are not employed to indicate that knowledge is an essential element of the crime charged. The doing of the inhibited act constitutes the crime, and the moral turpitude or purity of the motive by which it was prompted and knowledge. or ignorance of its criminal character are immaterial circumstances on the question of guilt. Whether or not in a given case a statute is to be so construed is to be determined by the court by considering the subject-matter of the prohibition as well as the language of the statute, and thus ascertaining the intention of the Legislature. Whatever may be the true construction of the statute, when, with a knowledge of all the facts, one deliberately violates a positive law which he is presumed to know, he cannot be excused on the ground that he intended no wrong. But the rule applies only to unlawful acts which are voluntary and in that sense intentionally done. 16 C. J. page 76; Whartons Crim.Law, pages 187 and 541; Hill v. State, 62 Ala. 168; Bain v. State, 61 Ala. 75; Gilmore v. State, 125 Ala. 59, 28 So. 382; Carl v. State, 89 Ala. 93, 8 So. 156; State v. Southern Express Co., 200 Ala. 31, 75 So. 343."

The doctrine established by the above language is in our opinion applicable to and decisive of the question above immediately mentioned in this case.

Obviously the code enactment prohibiting the sale of adulterated milk was enacted as a police measure to protect the interest of society in the purity of products offered for public consumption as food or drink. As a rule of necessity the act is properly construed as imposing a penalty when its terms are violated, no matter how innocently. Due regard for the public interest compels a construction that one acts at his peril in the sale of food products covered by police regulations seeking to insure their purity.

Obviously the purpose of the statute could not be accomplished if dependent on the subjective attitude of the person selling food products.

The fact that appellant was not present during the milking or placing of the milk in the cans does not affect his responsibility where knowledge or intent is not an element of the offense, the milk being obtained and handled by his employees in the regular course of their duties. Groff v. State, 171 Ind. 547, 85 N.E. 769, 17 Ann. Cas. 133.

In our opinion there is no merit in appellant's contention that the lower court erred in overruling appellant's objection to the admission in evidence of a check dated November 30, 1945, issued to appellant in the amount of $146.63. The check was signed by Tro-Fe Dairy Company, by V. J. Troutman, and was endorsed by appellant. Mr. Troutman had testified that he issued or caused to be issued the above check, that it covered payment for milk sold by appellant to the Dairy Company during the period that the milk in question was brought from appellant by the company, and that he was familiar with appellant's signature and that the endorsement on the check was appellant's. That the check was relevant in establishing the sale of the milk in question to the Tro-Fe Dairy Company is in our opinion obvious.

There was no error in the trial court's action in permitting over appellant's objection the state's witness W. A. Corley, who took the sample of milk from the weighing tank, to use a jar similar in all respects to the jar in which the milk was placed in demonstrating to the jury just how he placed the seal on the sample jar. Such evidence was of aid to the jury, and of probative value under the issues of this case. Pettus v. Louisville & Nashville Railroad Co., 214 Ala. 187, 106 So. 807.

On his direct examination the appellant testified in the trial below that he did not put any water in the milk in question or authorize any one else to do so, and further testified that he had never at any other time put water or other substance that would adulterate it into any milk sold by him.

■ On cross-examination the trial court overruled appellant's objections to questions as to whether he had not on October 31, 1945 put water into milk sold to the Tro-Fe Dairy Company. No error can be predicated on the court's ruling in this instance. When a party introduces a subject by permitting his witness to testify thereon, the adverse party may cross-examine him on such subject, even though it be irrelevant in its original phase. Louisville & N. R. Co. v. Quinn, 146 Ala. 330, 39 So. 756; Taylor v. State, 20 Ala.App. 161, 101 So. 160.

■ Four charges requested in writing by the defendant below were refused by the trial court. These charges are unnumbered. One was a request for the affirmative charge for the defendant, and was properly refused under the evidence of this case. The remaining charges were likewise properly refused as being either not predicated on the evidence, or as being vague and misleading, or as being covered by the very excellent oral charge given by the trial court.

■ We cannot agree with appellant's counsel that appellant's cause was so injured as to require a reversal of this case because of the following remarks made to the jury by the prosecuting officer in his argument to the jury: "I'll tell you gentlemen of the jury, the State of Alabama can't put enough guards around a man who would steal candy from a baby."

Of necessity a wide discretion must be accorded the trial judge in regulating the scope of the argument of counsel. Law trials are not social gatherings, and the efforts of a prosecuting official discharging his duty, not only to punish crime, but to deter others, should not be so encompassed as to discourage vigorous arguments to the jury in the solicitor's own style. As stated by our Supreme Court in Arant v. State, 232 Ala. 275, 167 So. 540, 544, "Such statements are usually valued by the jury at their true worth * * * and not expected to become factors in the formulation of their verdict."

In our opinion this record is free of error materially affecting the substantial rights of the appellant and an affirmance is in order.

Affirmed.