70 So.2d 285

### HODGE v. STATE.

### 5 Div. 442.

Court of Appeals of Alabama.

Feb. 2, 1954.

R. G. Wallace, LaFayette, for appellant.

Si Garrett, Atty. Gen., and Robt. P. Bradley, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant was tried on an indictment charging murder in the second degree.

His jury trial resulted in a verdict of guilty of manslaughter in the first degree, punishment being fixed at two years imprisonment.

The victim was the appellant's wife. She died as a result of a shotgun wound in the chest. Only the appellant and the deceased were present at the time of the shooting, which occurred in their home between 10 and 11 o'clock at night.

For the State Mamie Wallace testified that she lived across the street from appellant's house. On the night in question she heard two shots and went to her porch. The appellant was standing on his porch. Almost immediately she heard the victim call: "Oh, Lord, Jack you done shot me," and appellant replied, "No, I didn't."

On cross examination this witness testified that the first thing she heard said after the shots was the appellant calling: "Somebody come here quick, Ruth has shot herself." She further testified on cross examination that she heard Ruth hollow, but did not know what she said.

On redirect she again testified that she heard Ruth call "Oh, Lord, Jack, you shot me."

On recross she testified that she made a mistake when she told the grand jury that she had heard Ruth say: "Jack, you shot me."

The uncertain and changeable character of this witness' testimony, to a large extent, deprives it of any reliable probative force.

However, the State also presented additional witnesses.

Denson Mitchell testified that on the night in question he was standing on his porch, his home also being approximately across the road from appellant's. He saw the appellant fire a shotgun twice into the air, then unbreach the gun, reload it, and walk back into his house. A short time after this he heard that Ruth had been shot.

This witness testified that he did not hear any one call out after the appellant fired the shots.

Virginia Bailey, who lived near appellant's home, testified that when she heard two shots fired she went onto her porch. She saw appellant standing on his porch with a shotgun. She went back in her house and almost immediately heard a third shot and some one scream.

She then heard appellant calling: "Someone come here quick, Ruth done shot herself."

J. M. Abney, sheriff of Chambers County, testified that he went to the scene of the shooting a short while after it occurred.

After proper predicate it was shown that the appellant had made two statements to the sheriff as to how the shooting occurred. In one he said that he had the gun and the deceased had attempted to take it from him;

in the other version appellant had stated that the deceased had the gun and he had attempted to take the gun from her upon her threatening suicide.

The appellant further stated to the sheriff that he probably pulled the trigger.

The evidence presented by the defense was directed toward showing that the deceased was in ill health; that on the night in question the deceased, and not the appellant, had been the one who had fired the gun on the porch.

Testifying in his own behalf the appellant's version of this occurrence was as follows:

"And she had told me her stomach sure was hurting her, she couldn't put up with it much longer, and she took the gun out on the porch. I had it loaded up beside the bed, and she got it and went out on the porch and shot it and come back, and I was standing up side the stove tending to the meat, and I laid the butcher down and grabbed the shotgun and we scuffled with it, and how the trigger got pulled, I don't know.

"Q. You said you started to scuffle? A. Yes, sir, and when she fell, I fell down on her and kissed her, and I went out and hollaed for help.

"Q. Did you get some blood on you at that time? A. Yes, sir, it was on my shirt.

"Q. After you hollaed, what did you say when you hollaed? A. I said, 'Somebody come here quick, my wife has shot herself.' And I ran down to Roy's and told him to come get her and take her to the hospital quick."

It thus appears that there are two serious contradictions between the appellant's account and the tendencies of the State's evidence. First, according to the tendency of the State's evidence it was the appellant who fired the gun from his porch, and not his deceased wife as appellant contends. Second, the appellant testified that his wife had the gun and was shot in the struggle when he attempted to take the gun from her. According to Sheriff Abney the appellant stated to him in one version that he had the gun and his wife attempted to take the gun from him.

Such contradictions were sufficient to justify the jury in disregarding the appellant's version in whole or in part in arriving at their conclusions on the facts.

■■ Every killing is unlawful unless expressly excused, or justified by the law. A homicide being shown, it is encumbent upon the defendant to prove circumstances in mitigation, excuse, or justification, unless shown by the evidence produced by the State. The degree of the mitigation, the validity of the excuse, or justification, are questions for the jury. Champion v. State, 35 Ala.App. 7, 44 So.2d 616. Under this principle, and the tendencies of the facts shown by the State's evidence, we cannot say that the jury was without authority to find the verdict it did find. No error therefore resulted from the refusal of appellant's request for the general charge, nor in overruling appellant's motion for a new trial on the grounds that the verdict was contrary to the evidence and to the law.

■ During the examination of Sheriff Abney he was permitted to testify, over appellant's objection that he was not qualified, that in his opinion, based on the powder burns on deceased's clothing, that the gun was two feet from her when it was fired.

Previous to this testimony Sheriff Abney had testified that he had observed a good many people who had been shot with shotguns, and had observed the effects of powder burns and such on bodies and clothing during his experience as a law enforcement officer. He stated he had observed some five or six people a year who had been killed by gun shot during his nine years as an officer.

On voir dire Sheriff Abney testified he had never actually run experiments to determine the effect of powder burns.

We pretermit consideration of the question as to Sheriff Abney's qualifications to testify as an expert on powder burns. The

appellant himself testified that the gun fired while he had hold of its stock. The only testimony as to how the deceased held the gun was demonstrated to the jury by the appellant, the record merely stating that appellant "indicated" such fact to the jury. For aught appearing the deceased may have had hold of the gun barrel near the muzzle.

In any event the muzzle could very well have been two feet from deceased at the time the gun was fired in the struggle. We cannot see that the appellant was probably injured in his substantial rights by this ruling of the court. Sup.Ct. Rule 45, Code 1940, Tit. 7 Appendix.

The appellant's requested charges were refused without error in that they were affirmative in nature and properly refused under the developed evidence, or were abstract, or were covered by the court's oral charge.

Affirmed.