92 So.2d 55

Billie DUCK

v.

STATE.

7 Div. 379.

Court of Appeals of Alabama.

Jan. 15, 1957.

Keener & Keener, Centre, for appellant.

654

CATES, Judge.

The grand jury of Cherokee County presented a true bill accusing Billie Duck of murdering his wife, Myrtle Duck, by shooting her with a pistol. The petit jury convicted him of first degree manslaughter and fixed his punishment at ten years imprisonment.

John Patterson, Atty. Gen., and Owen Bridges, Asst. Atty. Gen., for the State.

The inferences susceptible from the evidence and the jury's verdict would support the following statement of facts:

Mr. and Mrs. Duck were living temporarily in Centre, Alabama, on August 5, 1954. That night they had eaten in the Elite Cafe, gone out in the country twice, and there bought whiskey, had drunk part of the whiskey, had gone twice to a Mrs. Sowell's house, and had just alighted from a taxi on their return home when the shooting occurred.

Duck's testimony was that earlier in the evening he had taken a .22 calibre revolver from his wife's pocket and had tucked it under his belt. As Mrs. Duck got out of the taxi she grabbed the gun from under his belt. Duck testified that he reached for Mrs. Duck's forearm to disarm her; just as he got hold of the gun, it fired. The State adduced proof that Duck said only his hands had been on the revolver. Undisputedly, Duck led the officers to the gun which was some unspecified distance from the scene of the shooting.

The coroner, who was also an undertaker, testified that the death of Mrs. Duck was, in his opinion, caused by a bullet fired into her brain. An entry wound was in Mrs. Duck's head about one and a half or two inches above the right ear, and with a probing instrument he was able to trace a path toward the left eye. There was no exit wound. Nor was the bullet found. The witness indicated to the court the location of the wound, as did his son, who was also a mortician. The son also pointed on his own head the direction the bullet apparently took.

The State then proceeded, over objection, to lay the predicate for culpatory admissions of the defendant.

The competency of these admissions presents two beginning questions: First, were the attending circumstances, e. g., the age and condition of the prisoner, the lapse of time after arrest, scene and persons present, indicative of a free willed act; and, second, had the corpus delicti first been shown?

Mr. Virgil Howell, a policeman, testified Mr. Duck told him "he shot her and he guessed he would burn for it." This statement was made by Mr. Duck after his arrest, while he was being taken to jail. He was riding on the front seat of a police car driven by Mr. Howell, and Mr. Will Smith, a watchman for the town, was on the back seat. We consider the statement, which implies the expectation of electrocution, as within the influence of the rule which requires the State to negative the presumption that incriminating extrajudicial statements are not voluntary. Jackson v. State, 226 Ala. 72, 145 So. 656.

The solicitor asked Mr. Howell, "Prior to Billie Duck making the statement to you, did you make any threats or promises or coerce him in any way?" The answer was, "No." "Did he make the statement voluntarily and of his own accord?" To which the witness replied, "He said he shot her and he guessed he would burn for it." "* * * Were you having a conversation with him at that time or did he voluntarily make the statement?" "Voluntary statement." "You did not ask him?" "No." "And it was not in response to any question?" "No."

The foregoing failed up to that point to negative that someone other than Howell had made threats, promises, or other inducements to elicit the statement against Duck's will. See Carr v. State, 17 Ala. App. 539, 85 So. 852. However, the next witness was Mr. Will Smith, who was questioned thus, "* * * did you or *anybody else* in your presence make any threats toward Billie to get him to talk or make any promises?" and again, "Did you *or anybody* in your presence make any promise or offer any inducement or reward?" (Italics supplied.) Smith answered, "No."

When a confession has been admitted in evidence a presumption of correctness attends the judge's ruling, Price v. State, 117 Ala. 113, 23 So. 691, Bonner v. State, 55 Ala. 242, but the presumption is not to be overindulged where all of the evidence on voir dire is in the record, Carr v. State, supra.

The enquiry is to see if the defendant's statement was wholly voluntary. Attendant circumstances can be gathered from ordinary narration without need of the solicitor's liturgical (though not heretical) question of, "Voluntary? Without promise or hope of reward," etc. Thus, where the defendant blurted out to a witness,

656

"We done beat that son of a bitch to death * * *." Livingston, C. J., characterized the statement as entirely voluntary. Davis v. State, 257 Ala. 447, 59 So.2d 592, 594.

Aside from the question as to whether or not Duck's admission was voluntary because uninduced, we consider any error under the Carr case, supra, to have been cured by Mr. Will Smith's testimony as to the total absence of any threats, promises, or inducements. Crenshaw v. State, 225 Ala. 346, 142 So. 669.

■ Was the corpus delicti established before admission of the statement? In homicide it is needful to show death of a human being and a criminal agency. According to Shelton v. State, 217 Ala. 465, 117 So. 8, for purposes of admitting a confession, accident, natural causes, and suicide should be negatived. However, since, ordinarily, use of a deadly weapon imports malice, a working presumption of unlawful homicide can arise from a death from a bullet. State v. Benson, 183 N.C. 795, 111 S.E. 869.

On the general issue, the burden of proof is unvaryingly on the State to convince the jury beyond a reasonable doubt. Except as to a plea of not guilty by reason of insanity, which is regulated by Code 1940, Title 15, Section 422, the defendant, both as to the general issue and as to matters of excuse and justification, is not required to satisfy the jury of his innocence but need only create a reasonable doubt of his guilt.

Contrariwise, the State is not required to disprove excuses and justifications. Tyler v. State, 19 Ala.App. 380, 97 So. 573; Henderson v. State, 11 Ala.App. 37, 65 So. 721; Gibson v. State, 89 Ala. 121, 8 So. 98; Lewis v. State, 88 Ala. 11, 6 So. 755. Nor do we construe Mr. Justice Somerville, in Shelton v. State, as requiring the State to prove beyond a reasonable doubt that death was not the result of accident, natural causes, or suicide. Rather, a gunshot wound causing death, as a matter of evidence, is sufficient to imply the probability of criminal agency, certainly for determining the competency of a confession. Hodge v. State, 37 Ala.App. 450, 70 So.2d 285.

"To prove a *prima facie* case of *corpus delicti,* all that was required was to show a reasonable probability that a criminal act of another had been the direct cause of the death." People v. Ives, 17 Cal.2d 459, 110 P.2d 408, 411.

The decision of admissibility of the defendant's statement was for the court unaided by the jury. We cannot say that the demonstrations by the coroner and his son, as observed by the trial judge, were not cogent enough to overcome in his mind any plausible theory of suicide or accident. Price v. State, supra; Bonner v. State, supra. This testimony, as to the wound and course of the bullet, made a case sufficient for submission of Duck's statement to the jury. Kozlowski v. State, 248 Ala. 304, 27 So.2d 818.

■ On cross-examination the defendant was asked, "I will ask you whether or not sometime during the month of June in the presence of this colored man, Willie Seymore, and in the presence of fellow employees of yours on the job while working in Cherokee County, if you did not say this or this in substance: 'That if you had the rifle one of these men had at that time that you would kill your wife?'" This he denied. To impeach him the State put on a witness who testified that in his presence some time in June 1954 when "an individual" who worked with him and Duck "had a rifle out there" in Cherokee County on a bridge where they were working, Duck had made the statement "if he had that rifle where his wife was he would kill her."

The appellant cites Bridges v. State, 225 Ala. 81, 142 So. 56, to show reversible error upon the principle that as between the statement with which the defendant was confronted and that of the impeaching witness there was a variance great enough to cast doubt on whether the two

witnesses were recalling the same statement. Thus in McClellan v. Lyle-Taylor Grain Co., 205 Ala. 59, 87 So. 596, the variance between " 'some corn * * * that was liable to be damaged' " and " 'other corn * * * that was exposed to the weather' " was considered objectionable. In Murph v. State, 153 Ala. 67, 45 So. 208, the predicatory question was, had not the main prosecution witness on a certain occasion said he had been tried and convicted in Dallas County for murder and sentenced to the penitentiary. The question put to the impeaching witness corresponded to the predicate, but the witness qualified his answer by restricting the statement of the prosecution witness as being to the effect that he had been convicted for "shooting a man." The discrepancy made the answer excludable. A similar situation of lack of correspondence between the impeaching witness' reply and the statement sought to be contradicted was set out in Bridges v. State, supra.

Substantial similarity and not identity is required to exist between the predicate laid and the proof adduced by the impeaching witness' testimony. Holmes v. Holmes, 212 Ala. 597, 103 So. 884 (dictum); Clifton v. Gay, 21 Ala.App. 412, 109 So. 168; Nelson v. Iverson, 17 Ala. 216. In Armstrong v. Huffstutler, 19 Ala. 51, "worthless" and "of no value" were equated.

We consider here that the State's impeaching witness was questioned and replied thereto within the framework of the predicate.

■ After the defense had rested, the State recalled Mr. Duck for further cross-examination and asked him where he (and his wife) had gone on the first trip to get some whiskey, and to whose house. To each of these questions the defendant objected, to both as immaterial, and as to the latter as being also highly prejudicial. The overruling of these objections is assigned as error in that the questions brought before the jury the commission of another crime, i.e., the purchase and possession of illegal whiskey.

However, there had been extensive testimony on the defendant's direct examination as to the getting and drinking of whiskey. The subject having been brought up by the defendant, the State had a right to cross-examine with respect thereto, dictum in Louisville & N. R. Co. v. Quinn, 146 Ala. 330, 39 So. 756. Thus, where defendant on direct examination asserted he had never at the date charged or at any other time adulterated milk, it was proper cross-examination to ask him whether or not a fortnight before the date of the alleged offense he had put water in milk sold by him, Allen v. State, 33 Ala.App. 70, 30 So. 2d 479; Wilkerson v. State, 221 Ala. 453, 129 So. 722. Having started the enquiry, the defendant cannot complain of its pursuit without verging on invited error. Pitts v. State, 261 Ala. 314 at page 318, 74 So.2d 232; Dorsey Trailers, Inc., v. Foreman, 260 Ala. 141, 69 So.2d 459.

We consider in the circumstances no prejudice arose, both because the matter was injected by the defendant himself and because the answers to cross-examination brought out nothing more of substance that had not been given in chief.

■ The defendant next assigns that the State did not make out a prima facie case of first-degree manslaughter. In view of the testimony as to the firing of the gun (Duck testifying on trial that he didn't touch the trigger and Howell testifying that Duck said he had shot his wife), we consider that there was evidence enough to make a jury question of the conflict.

■ The final question presented arises as to the form of judgment entry which reads:

"On this the 15th day of February, 1955 came John J. Black, Solicitor, who prosecutes for the State of Alabama, and also came the Defendant in his own proper person and by attorney, and the Defendant being duly arraigned upon said Indictment,

for his plea thereto; says he is not guilty. Thereupon came a jury of good and lawful men, to-wit; H. R. Vanpelt and eleven others, who being duly impanuelled and sworn according to law, upon their oaths do say, 'We, the jury, find the Defendant guilty of first degree manslaughter and fix his punishment at (10) ten years imprisonment in the State penitentiary.' And now upon this the 15th day of February, 1955, the Defendant being in open Court and being asked by the Court if he had anything to say why the sentence of the law should not be passed, says nothing. It is therefore considered by the Court, and it is the judgment and sentence of the Court that the said Defendant Billie Duck, be imprisoned in the Penitentiary of the State of Alabama for a term of ten years. The Defendant being asked if he had anything to say than he had already said as to why the sentence should not be passed, says nothing. The Defendant is sentenced to imprisonment in the penitentiary for Ten years in keeping with the verdict of the jury."

To this assignment the defendant cites the proposition that an appeal in a criminal case can be taken only from a valid judgment of conviction, citing Vick v. State, 156 Ala. 669, 46 So. 566 (opinion in Southern Reporter only). This statement we deem to be the proper consequence of Code 1940, Title 15, Section 367. The cases such as Vick v. State, supra, Nichols v. State, 100 Ala. 23, 14 So. 539, Ayers v. State, 71 Ala. 11, Mayers v. State, 147 Ala. 687, 40 So. 658 (no opinion in state report). Bridges v. State, 124 Ala. 90, 27 So. 474, Allen v. State, 141 Ala. 35, 37 So. 393, are illustrative of the statement that a bare judgment of sentence will not support an appeal to this court. However, from the words, "It is therefore considered by the court, and it is the judgment and sentence of the court that the said defendant," etc. was such an adjudication of guilt to be a proper judgment of conviction by implication from the judgment of sentence, Carmichael v. State, 213 Ala. 264, 104 So. 638, 639. The opinions of Judge Bricken in

Wells v. State, 19 Ala.App. 403, 97 So. 681, and in Milam v. State, 24 Ala.App. 403, 136 So. 831, best illustrate the distinction between the clerk's narrative, Gray v. State, 55 Ala. 86, and an act of adjudication. Accordingly we find the judgment entry free of error.

That the judge did not sign the judgment is not error. Watts v. State, 204 Ala. 372, 86 So. 70; Patton v. State, 246 Ala. 639, 21 So.2d 844.

The transcript of evidence shows the defendant was put on trial February 14, 1955, and the trial carried over into the next day. The "judgment entry" in the record is preceded on the upper left hand side by the date "Feb. 14, 1955". The entry shows full compliance with Code 1940, Title 30, Section 63, except for the implication that it would have been impossible for the defendant to have had the benefit, after the service of indictment and lists, of the mandatory one entire day before trial. Under Supreme Court Rule 25, Code 1940, Tit. 7, Appendix, the sheriff's return to said order is not part of the transcript unless the trial court passed on some question thereon. Moreover, under Code 1940, Title 15, Section 380, the order for special venire could have been stricken from the transcript on motion, Redman v. State, 8 Ala.App. 408, 62 So. 992. No question having been raised below, none lies here. Scott v. State, 228 Ala. 509, 154 So. 113; Davis v. State, 229 Ala. 674, 159 So. 209. Indeed we infer, from the silence of the record as to objection, that the date given was the date on which the entry was copied into the minutes and not the date on which the order was made or else clerical misprision. Clearly there was no error within Code 1940, Title 15, Section 389. See also Davis v. State, 259 Ala. 212, 66 So.2d 714.

We have reviewed the record carefully as required and are satisfied therefrom that the appellant received a full and fair trial below, and the judgment of the circuit court is due to be affirmed.

Affirmed.