TYSON, Judge.
George Adkins was indicted for rape in the first degree in violation of § 13A-6-61, Code of Alabama 1975. The jury found the appellant “guilty as charged in the indictment” and the trial judge sentenced him to 50 years’ imprisonment in the penitentiary.
On the night of August 1, 1984 the victim went out with a friend, Ricky Rollins. As Rollins was driving her home that night, they saw the victim’s father, the appellant, at Billy Mackens’ store in Hollywood, Alabama. The two stopped and talked to the appellant who had been drinking. The victim arrived home at 11:15 p.m. Shortly, the appellant came home and went into the victim’s room. He told her he wanted to talk to her. She got dressed and went into the kitchen. The appellant told her to go outside and get in the ear.
The two then drove toward Hollywood. The appellant began laughing and told the victim to slide over next to him. She resisted and he began pulling her over toward him and putting his hands on her. At some point, the appellant said, “I’m going to make love to you tonight.” (R. 44).
The appellant drove up Crow Mountain and turned on a road and stopped. He told the victim that it was going to happen and she said no. The appellant then got out of the car for about five minutes. When he got back in the car, he scooted the seat back and then got on top of the victim. He started undoing the victim’s pants. She began crying, screaming and kicking. The appellant pressed the victim's hands against the window and slapped her. He then hit her in the eye with his fist and she became dizzy.
The appellant pulled both of their pants down and had intercourse with the victim. The appellant then stated he “hoped that that had caused me [the victim] to hate him because all he was doing was showing his love for me.” (R. 48).
The appellant started the car but it was stuck. He told her that they were going to find someone to get them out. The two went to two houses but couldn’t get any help. As they were walking on the road, the appellant grabbed the victim and threw her on the ground. He said he wasn’t satisfied and he was going to do it again. When the appellant put his hands in her pants, the victim told him there was a snake on her foot. The appellant looked down and the victim got up and started running. She was threatened not to tell anyone about what happened.
The victim then went to the Potter’s house. She told the Potters that she and her father were stuck. She said her father was mad at her and had hit her. She asked them to call her mother. The victim’s mother told her to spend the night at the Potters and catch a ride into town the next morning with Mr. Potter.
The next morning the victim’s mother picked her up and took her to a lawyer’s office where her aunt worked. When her mother asked her if she was okay, the victim replied that she had been raped. Her mother then took her to the doctor where she underwent a thorough examination.
Clara Potter testified that, when the victim came to her she was upset, scared and crying. The victim told her that her daddy was drunk. Her eye was red and she had a cut on her arm. The victim spent the night at her house after talking to her mother. The next morning the victim had a black eye.
Dr. William Coleman saw the victim on the morning of August 3, 1984. She was extremely upset. He conducted an examination of the victim. Her left eye was black and she had a bruise on her left cheek. There were scratches and abrasions on her arms. Coleman testified that there were tears on the inside and outside of the victim’s vagina. He used a rape kit in his examination.
Roger Morrison, a forensic scientist with the Department of Forensic Sciences, testified that he found seminal stains on the *433 crotch area of the victim’s jeans and underpants. He also found blood stains on the left leg of her jeans. Seminal stains were found on the vaginal and anal swabs and blood stains were present on the vaginal swab. Morrison stated that the spermato-za he found came from a group A secreter. The appellant is a group A secreter.
Bob Hambrick stated that the appellant called him on the morning of August 2, 1984 and asked him to help get his car from Crow Mountain. The car was stuck in the road and Hambrick helped the appellant pull it out.
Joan Adkins, the appellant’s wife, stated that, when her daughter called on the night in question, she was hysterical. The victim said that appellant was coming home and wanted to kill her mother. She said she’d been hit and told her mother to leave the house.
The appellant stated that he had been drinking heavily on the night in question. He admitted driving the victim up Crow Mountain that night but denied he raped her. He said he wanted to talk to her about her dating practices and had slapped her.
I
The appellant contends the trial judge incorrectly allowed into evidence the photographs of the scene where the alleged rape occurred. He objects to the admission of these photographs on three grounds. First, the photographs were taken in the fall when the leaves were off the trees and the alleged rape took place in the summer when there were leaves on the trees. Secondly, a dead hog was depicted in the photographs. Thirdly, the ruts in the road appeared deeper in the photographs than they were when the alleged rape occurred.
“A photograph is properly admissible in evidence if two conditions are met. First, the picture must be properly verified either by the photographer or by a person who is familiar with the subject of the photograph. Secondly, the photograph must tend to prove or disprove some disputed issue, must either illustrate or elucidate some relevant fact or must corroborate or disprove some other evidence offered or to be offered.
“The fact that the conditions as shown in the photograph are not exactly the same as they were at the time of the event in the suit does not render it inadmissible where the differences are immaterial and are explained so that no harm is done the opponent. However, where it appears that the conditions as pictured in the photograph are different in important respects from the conditions existing at the time of the event in suit, the photograph should not be admitted.
The photographs in question were admitted into evidence to illustrate the victim’s testimony as to where the rape occurred and Hambrick’s testimony concerning where the appellant’s car was stuck. The admission of the photographs into evidence for these purposes was proper. Mickens v. State, 428 So.2d 202 (Ala.Crim. App.1983).
The differences between photographs of the scene and the scene at the time the rape allegedly took place are insignificant and were fully explained to the jury during Hambrick’s testimony. Therefore, we find no error in the trial judge's decision to admit these photographs into evidence.
II
During the cross-examination of the appellant, the prosecutor asked him if he usually drove his family around while he was intoxicated and if he was concerned that they might get hurt. The appellant now objects to this matter on the grounds that it brought the jury’s attention to the fact that the appellant was driving while intoxicated.
During the direct examination of the appellant, he stated that he was driving the car on that night while he was extremely intoxicated. Since the defense raised the matter of the appellant’s driving while intoxicated, this subject was proper for cross- *434 examination by the prosecutor. Duck v. State, 38 Ala.App. 652, 92 So.2d 55 (1957).
III
There is no merit to the appellant’s argument that the trial court erred in its charge to the jury concerning reasonable doubt. After an examination of the record, we find the trial judge correctly explained the concept of reasonable doubt to the jury.
Furthermore, if the trial court’s oral charge is not as complete as the appellant wishes, his remedy is to submit written charges covering any missing principles of law. Smiley v. State, 435 So.2d 202 (Ala. Crim.App.1983); Trahan v. State, 450 So.2d 1102 (Ala.Crim.App.1984); Walker v. State, 416 So.2d 1083 (Ala.Crim.App.1982).
IV
The appellant alleges the trial court erred by refusing to give his written requested charge number five. This alleged error is not before this court because the appellant failed to object and state grounds for his objection to the trial court’s refusal to give his written requested charge. Allen v. State, 414 So.2d 989 (Ala.Crim.App.1981), affirmed 414 So.2d 993 (Ala.1982). Phillips v. State, 437 So.2d 666 (Ala.Crim.App.1983); Berry v. State, 434 So.2d 295 (Ala.Crim.App.1983).
Moreover, our review of the trial record reveals that the refused charge was adequately covered by the trial court’s oral charge. We find no error here. Moore v. State, 457 So.2d 981 (Ala.Crim.App.1984); Pace v. City of Montgomery, 455 So.2d 180 (Ala.Crim.App.1984).
V
The appellant raises the claim of inadequate representation by counsel at trial. There is a strong presumption in favor of reasonably effective assistance of counsel and the burden of proof rests with the appellant to prove otherwise. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Daniel v. State, 459 So.2d 948 (Ala.1984); Duncan v. State, 461 So.2d 906 (Ala.Crim.App.1984); Dill v. State, 484 So.2d 491 (Ala.Crim.App.1985).
We have reviewed the appellant’s allegations of ineffective assistance of counsel and find he has failed to demonstrate to this court that his counsel’s performance was deficient in a legal sense. Nor has he convinced us that, if his counsel’s performance was deficient, he was prejudiced thereby in any way. Dill, supra, Strickland, supra.
Therefore, this cause is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.