69 So.2d. 459.

## DORSEY TRAILERS, Inc. v. FOREMAN.

### 4 Div. 749.

Supreme Court of Alabama.

Dec. 17, 1953.

142

B. J. Dryer, Woodward, and J. C. Fleming, Elba, for appellant.

C. L. Rowe, Elba, for appellee.

MERRILL, Justice.

This is the second appeal in this cause. It was originally in this court as a result of an involuntary nonsuit taken by the plaintiff and is reported as Foreman v. Dorsey Trailers, Inc., 256 Ala. 253, 54 So. 2d 499.

This appeal is from a judgment for $4,000 in favor of plaintiff, Mr. Foreman, against Dorsey Trailers, Inc., appellant here, for damages claimed on account of paint or lead poisoning. The cause was submitted to the jury under Count Two as amended, which charged wantonness in regard to the place of employment, and and Counts Three and Four, which charged

wantonness under the Employer's Liability Act, Code of 1940, Title 26, § 326. Count Three alleged that the Plant Superintendent, Mr. Mayo Prescott, caused the plaintiff to work under enumerated conditions which were not safe because of improper ventilation. Count Four, also naming Mr. Prescott, alleged that he caused the plaintiff to

work under the dangerous conditions with the doors closed and the places of ventilation closed. The appellant pleaded in short by consent. A motion for a new trial was denied.

The tendencies of the evidence show that plaintiff had worked as a spray painter for defendant since 1947. In August of 1948 plaintiff became sick and was sent to Dr. O. N. Edge of Troy for treatment. Mr. Prescott, as defendant's superintendent, went to see plaintiff and urged him to return to work, whereupon he was informed that plaintiff had had an attack of lead poisoning and that Dr. Edge had told him he could not stay around paint any more. Mr. Prescott told plaintiff that if he would come back to work he would give him a job outside the paint spraying stalls. Plaintiff took this matter up with Dr. Edge and Dr. Edge advised him that he could go back to work if he did not work in the paint stalls. Plaintiff told Mr. Prescott what Dr. Edge had said, returned to work on September 6, 1948, and was paid workman's compensation for the period of his disablement. He was made foreman of the spray painting operation upon his return.

The spray painting was done at defendant's plant in what are known as paint sheds or stalls. The stalls, several under one roof, were somewhat larger than the trailers which were painted inside of them. These trailers were typical of those which are attached to trucks for the hauling of freight. Some of the stalls had ordinary portable electric fans approximately 30 to 36 inches in diameter to force the fumes out through the front of the stalls. Ordinarily the doors to the stalls were kept open, but whenever it rained or it was windy enough to blow sand or dust, the doors on the front were pulled down. Usually two men with spray guns were in each

stall painting the same trailer at the same time, but on some occasions as many as four or five men were painting in one stall simultaneously. The workmen were furnished respirators containing filters to be worn while they were inside the stalls painting. These were furnished free of charge by defendant.

The testimony of the plaintiff was in conflict with that of Mr. Prescott in that plaintiff testified that Mr. Prescott ordered him inside the stalls to do painting about half the time and that he needed a job and yielded to these orders; that he and the other painters used the respirators but sometimes the stock room would not have filters and they would have to paint without protection; that he reported this to Mr. Prescott on several occasions. Mr. Prescott denied these allegations but did agree that some painting took place with the doors closed on windy or wet days; that the spray guns did fill the booth with a cloud or fog of paint spray and that he knew that being subjected to the cloud or fog of paint would make a man sick, if he went into the booth without a respirator when the doors were closed. Other workmen testified for both plaintiff and defendant concerning the density of the clouds of paint spray and whether or not they could taste the paint when they wore the respirators and one painter said he stayed in a stall on one occasion long enough to be drunk on paint when he came out. There was also a conflict as to why plaintiff quit working for defendant. Mr. Prescott contended it was because he required plaintiff and another to repaint a job on their own time following which plaintiff did not return to work. Plaintiff contended that it was lead poisoning that caused him to quit. The contentions of both parties were substantiated in part by the record of plaintiff's claim for unemployment compensation.

Dr. J. C. Ray testified that according to the results of a laboratory test upon plaintiff dated April 17, 1952, that plaintiff had a low blood count, a usual symptom of paint poisoning, and a stippling, which "is a blue deposit on the blood cell itself, which is diagnostic of lead in the blood",

**144**

and that it is the normal result of lead poisoning. He further stated that in his opinion plaintiff is about 50% disabled "in a general occupation line", 100% disabled as far as spray painting is concerned, and disabled "to a great degree as far as application of paint by brush."

■ Appellant has 120 assignments of error of which 66 are argued. All of these assignments, except No. 65, complain of the trial court's action in overruling the motion for a new trial. Some assignments are argued together in brief and if one of them is without merit, the others need not be examined. Aircraft Sales & Service v. Gantt, 255 Ala. 508, 52 So.2d 388.

■ Assignments of error 59 through 65 raise the question of the sufficiency of the counts in alleging wantonness. In Lovell v. Southern Ry. Co., 257 Ala. 561, 59 So.2d 807, 808, we said, " 'Wantonness' has been defined as the conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act, or omission of such duty, injury will likely or probably result." Plaintiff not only alleged wantonness but set up the facts upon which the charge was predicated. We think it was sufficiently alleged. Foreman v. Dorsey Trailers, Inc., supra; Gentry v. Swann Chemical Co., 234 Ala. 313, 174 So. 530.

■ Assignments 45 through 52 and No. 56 are based on the failure of the court to give nine requested charges. We have considered these charges in conference and find that each is infected with one or more vices in that they are argumentative, were directed to all three counts when actually aimed at only one count, were outside the issues of the case or were covered by the oral charge of the court or other given charges. We find no error as to these assignments.

Assignments of error 68 through 113 deal with objections to testimony given by Mr. J. W. Moody, the first witness called by plaintiff. Mr. Moody testified that he had previously worked for defendant for about a year in charge of a warehouse. He left the defendant in November 1946 to accept employment with the State of Alabama and after some training he was made a Safety Inspector of industrial plants, working in twenty-three counties in the State of Alabama of which Coffee was one. It was his duty to check safety conditions in industrial plants in his assigned areas. He made two inspections of defendant's plant, one in August 1948 and the second in August 1949. It should be noted that the time covered in plaintiff's complaint is from November 1, 1948, to June 17, 1949. Mr. Moody testified concerning the conditions under which painting was carried on at the time of his first inspection, that he considered the conditions unsafe, that he made out a report for his superiors and he discussed this report with the executives of defendant plant and made recommendations to correct the lack of ventilation and air in the paint stalls when the paint was being sprayed on the trailers. Mr. Moody left the employment of the State as Safety Inspector and had resumed work for defendant at the time this cause was tried. From the moment Mr. Moody took the stand as a witness, counsel for defendant objected to practically every question that was asked him. When it was called to the court's attention that Mr. Moody's inspections of the plant did not take place during the time plaintiff alleged that he received his injuries, the court overruled the objections, subject to plaintiff connecting the conditions surrounding the painting operation in such a manner as to make the testimony admissible. Throughout our reading and study of this record, we were very conscious of the fact that Mr. Moody's testimony had not been directly connected with the period of time involved in the suit. But on the last page of the transcribed testimony we find the following:

(Mr. Rowe represented the plaintiff and the defendant was represented by Mr. Dryer and Mr. Fleming.)

"Mr. Dryer: I move to exclude all the testimony of the witness J. W. Moody, on the ground that it was not properly connected up so as to put it

within the time, and under the same circumstances as the period during which plaintiff claims to have been injured.

"Mr. Rowe: Now let the record show that counsel for defendant concede that they themselves insist that the paint shop, and the stalls thereof were in the same condition all the way through from the time of Moody's inspection until the time that the plaintiff ceased to work for the defendant, on or about the middle of June, 1949.

"Mr. Rowe: Is that correct, Mr. Fleming?

"Mr. Fleming: I think so.

"The Court: All right, sir, I deny the motion.

"Mr. Dryer: And we except.

(The Jury was then brought back into the Jury Box, and counsel proceeded with the Oral Argument.)"

In view of the above we are compelled to disregard all the assignments of error which have to do in any way with the objections to any testimony of Mr. Moody on the ground that it was not properly connected insofar as time and working conditions were concerned.

Other objections to the testimony of Mr. Moody were based on the ground that he was not qualified as an expert to give his opinion as to whether the conditions under which the defendant had its trailers painted were safe for the employees doing the painting. In Johnson v. Battles, 255 Ala. 624, 52 So.2d 702, 705, we said, "It is well established that the inquiry as to the competency of a witness to testify as an expert is addressed to the sound discretion of the trial court, whose decision on the evidence will not be disturbed on appeal except for palpable abuse." (Citing cases.) We do not think there was any abuse of the trial court's discretion here.

Assignment of error 114 is concerned with a question which was not answered by the witness and there is therefore no error.

Assignment of error 43 arises out of the refusal to give the general affirmative charge for the defendant. From our statement of the facts we think it is clear that the defendant was not entitled to the affirmative charge.

The final assignment of error which is argued, No. 5, is that the trial court erred in overruling defendant's motion for a new trial on the ground that the verdict was contrary to the great weight of the evidence.

The trial court committed no reversible error in denying the motion. Gulf, M. & O. R. Co. v. Sims, post, p. 258, 69 So. 2d 449, citing Cobb v. Malone, 92 Ala. 630, 9 So. 738.

The judgment of the circuit court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.