147 So.2d 279

Julia Walker **RUSSELL**

v.

**RELAX–A–CIZOR SALES, INC., et al.**

6 Div. 773.

Supreme Court of Alabama.

July 12, 1962.

Rehearing Denied Dec. 20, 1962.

Rives, Peterson, Pettus & Conway and J. Kirkman Jackson, Birmingham, for appellant.

Frank M. Young, S. R. Starnes and Spain, Gillon & Young, Birmingham, for appellees.

**HARWOOD, Justice.**

This is an appeal from a jury verdict and judgment in favor of the defendants, and from an order overruling appellant's motion for a new trial.

Appellant sued the manufacturer of an electric reducing machine, known as a Relax-A-Cizor, and the saleswoman who demonstrated it. The case was submitted to the jury on Count A, which charged substantially that:

The defendants were engaged in the business of manufacturing, assembling or selling a device under the trade name of "Relax-A-Cizor" which was sold and distributed by the defendants for use by the public as a reducing machine and muscle conditioner; that defendants sold the daughter of the plaintiff one of said devices to be used by her and members of her family; and that the device was not reasonably safe for use by the public but was imminently dangerous when used for the said purpose in that the device introduced into the human body dangerous amounts of electrical current when used in the prescribed manner; that such danger was known or by the exercise of reasonable diligence should have been known by the defendants but was not known to the plaintiff or her daughter and was not revealed to them by the defendants; that on November 10, 1957, plaintiff was using the device as directed by the defendants, when the device began

suddenly to function in an imminently dangerous manner and proximately caused plaintiff to suffer severe and permanently crippling injury and damage; that the defendants negligently caused or allowed the plaintiff to use the device without having exercised reasonable diligence to notify the plaintiff that the device was imminently dangerous to human life and limb; and that plaintiff's injuries and damages were proximately caused by such negligence.

Each of appellant's two married daughters purchased a machine after demonstrations by the defendant, Mrs. McDowell. One of the daughters loaned her machine to appellant, together with some of the advertising material and a book of instructions. On Sunday morning, November 10, 1957, appellant connected the machine to her body with a pad on her stomach and smaller pads on either arm. She reclined on a chaise lounge and turned on the machine, which, by electrical impulses, contracted muscles of the body for three-quarter second intervals and ceased the electrical impulses and allowed the muscles to relax for three-quarter second intervals after which the cycle of impulse and relaxation would continue.

The machine was on a coffee table beside appellant and while she was so connected up with it, she increased the electrical current into her body by increasing the regulatory dial setting of the machine. Immediately after doing this, she suddenly felt her arms being thrown over her head during the impulse interval and she felt her arms drop back into her lap during the relaxation interval. This flailing of her arms caused severe pain in her shoulders and lasted from 5 to 10 minutes while she screamed for help. She was unable to turn off the machine and she could not pull the plug of the machine out of the wall socket.

Her husband, who was taking a bath and had the water running in the tub, finally heard her screams, ran to her rescue and pulled the plug from the wall. The culmination of appellant's injuries was the insertion of a metal joint into her shoulder after the removal of a fractured bone.

The machine was later demonstrated by Mrs. McDowell and it was tested by Southern Research Institute. It was also examined and tested by a physiologist on the staff of the Medical College of Alabama. The demonstration and the test by everyone, except Dr. Emerson, was uneventful but the physiologist testified that in his opinion, the machine was unsafe for use on the human body. It was shown that over a period of 9 years, more than 300,000 of the machines had been manufactured and distributed with no complaints about fractures or dislocations of bones, and this particular machine had worked properly on every occasion before the accident and had worked properly after the accident.

The defendant pleaded in short by consent, which included the general issue and contributory negligence.

Appellant concedes that the sufficiency of the evidence is not an issue on this appeal.

The four argued assignments of error are concerned with two charges and two instances where the appellees' witness, Druz, was permitted to testify as an expert.

Appellant contended at trial that the machine which she was using suddenly produced strong electrical impulses which caused her arms to flail violently and her injuries resulted therefrom. Appellees contended that appellant turned the machine's current regulator too high, or else fell from the lounge on which she was reclining, and that her injuries were due to an intervening cause. The appellees requested charge 66, which was given by the court reads:

"Gentlemen of the Jury, I charge you that where one cause merely cre-

ated the condition, and after the condition had· been created, an intervening agency produced the injury, the first cause is not the proximate cause." Appellant contends that this charge is not a correct statement of the law because it disregards those requirements of an intervening cause, namely (1) of independence, (2) of being an efficient cause within itself, (3) that the intervening agency not be reasonably anticipated or foreseen.

We agree that this charge does not fully state the law in relation to an intervening cause, but this identical charge has formerly been held good by this court. The charge is a literal copy of the second headnote in Garrett v. Louisville & Nashville R. Co., 196 Ala. 52, 71 So. 685, but it was argued in Clendenon v. Yarbrough, 233 Ala. 269, 171 So. 277, that it was not a correct statement of the law. This court, after a full discussion, said:

"We do not think that the charge of the court as a whole tended to mislead the jury, nor was it an improper statement of the law. It is our judgment that they should have, and probably did, fairly understand the legal principles applicable as the court instructed them. We see no occasion therefore for reversing the judgment for the failure to grant a new trial on that account."

We note that the trial court properly defined actionable negligence in this case in his oral charge by saying, "In order for negligence to be actionable, the injury must follow the negligence in the natural and probable sequence, unbroken by any independent, intervening, efficient cause, so that but for the negligence complained of, the injury would not have occurred."

We would not hold a court in error for refusing to give charge 66, but under the authority of Clendenon v. Yarbrough, supra, we will not reverse the judgment because the charge was given.

It is also argued that the court erred in giving appellees' requested written charge 52, which reads:

"I charge you that if you are reasonably satisfied from the evidence that the plaintiff did or omitted something on the occasion complained of which a reasonably prudent person similarly situated would not have done and that this proximately contributed to plaintiff's injury, then I charge you that you cannot find for the plaintiff in this case."

■ Appellant argues that this charge is confusing and misleading and also incorrect. We have repeatedly held that if a charge is deemed misleading, an explanatory charge should be requested, and the giving of a misleading charge does not necessitate a reversal. Blakeney v. Alabama Power Co., 222 Ala. 394, 133 So. 16; Ray v. Richardson, 250 Ala. 705, 36 So. 2d 89; First National Bank of Mobile v. Ambrose, 270 Ala. 371, 119 So.2d 18. See 18A Ala.Digest, Trial, ☞256(2).

■ We have also held that giving of an erroneous charge does not necessarily mean a reversal of the trial court. In International Union, etc. v. Russell, 264 Ala. 456, 88 So.2d 175, 62 A.L.R.2d 669, we said:

"Appellants further argue that the charge was erroneously given because it fails to instruct that punitive damages could be awarded only if the jury determined that plaintiff suffered actual damages. This argument is without merit for the subject is fully covered in the oral charge given by the judge. Such being the case, if any error existed, it is not reversible error. Marbury Lumber Co. v. Lamont, 198 Ala. 566, 73 So. 923; Western Union Telegraph Co. v. Gorman, 237 Ala. 146, 185 So. 743; McGough Bakeries Corp. v. Reynolds, 250 Ala. 592, 35 So.2d 332. The oral charge also cured any possible defect in plaintiff's requested Charge No. 3, given by the court."

■ The trial court gave a comprehensive oral charge on negligence and fully covered the subject both as to commission and omission. Conceding only for the sake of argument that the charge was erroneous, we think what we said in Morgan County v. Hill, 257 Ala. 658, 60 So.2d 838, is applicable:

" * * * A determination that an erroneous charge has been given does not carry with it an automatic reversal. It is only when the error complained of 'has probably injuriously affected substantial rights of the parties' that we are authorized to reverse; and this is to be determined 'after an examination of the entire cause'. Code 1940, Tit. 7, Appendix, Supreme Court Rule 45. We have considered, in consultation, the entire cause and have concluded that the giving of charge 2 has not 'probably injuriously affected substantial rights' of the appellant. * * * "

The two other assignments of error are concerned with the overruling of objections to two different questions propounded to appellees' witness, Druz, who testified as an expert. The two instances follow:

"Mr. Druz, is there any yardstick, with respect to the amount of mili amps that are safe for the use on the human body?

"MR. BURGE: We renew our objection on the grounds this man is not a Physiologist; is not qualified as an expert on the tissue of the human body; is not qualified to answer the question.

"THE COURT: Overrule.

"MR. BURGE: We except."

*   *   *   *   *   *

"Q Mr. Druz, based on your studies, your knowledge of the tests that have been made and the varying circumstances and conditions, do you consider the machine, the Plaintiff's machine to be safe for the use by human beings?

"MR. BURGE: We object to the question on the grounds this witness has not been shown to be a physiologist; has not been shown to be an expert on the human body; is shown to be a TV and radio expert in electronics, and that is all; and we object on those grounds.

"THE COURT: Overrule.

"MR. BURGE: We except."

Appellant contends that the witness should not have been allowed to testify to his opinion on these matters because they were outside his field of training and experience. This contention is based largely upon the following part of the cross-examination of the witness:

"Q I just ask you do you know what this machine does to the muscle tissue?

"A No, sir; I do not.

"Q You don't know? Do you know what this machine does to nerve tissue, Doctor?

"A No, sir; I don't."

(Druz was not a doctor.)

The witness Druz, called as an expert witness for appellees, was Division Engineer in the Research Division of Zenith Radio Corporation and had been employed by that company for eleven years. His particular field was electronics. He served as a consulting engineer to the manufacturer of the machine in question, Eastwood Industries, for around three years and was familiar with every detail of this machine. Within the framework of the Institute of Radio Engineers, of which Druz was a senior member, there are separate profes-

sional groups who have an interest in a narrow specialized field. Druz is a member of the group on Medical Electronics. Medical Electronics is concerned with problems which arise in medicine which have to do with body processes that are electronic, or instrumentation of an electronic nature for studying various body reactions, or body effects or controls of the body. It involves the contraction of muscles as a result of some external stimuli. It involves a study of most parts of the body and a study of the excitement of muscles by stimulation, the effects and results. Also, the current produced by the heart, brain and nerves and various other currents produced by the body or which may be applied to the body are studied by this group on medical electronics. Witness Druz participated in a study made by the Psychology Department of the Illinois Institute of Technology pertaining to muscle stimulation wherein a machine was designed and constructed to produce any conceivable known type of stimulation. He also had assisted the Head of the Psychology Department of the Illinois Institute of Technology and was in fact in charge of the construction of the instrumentation for measurement of reaction time and electrical stimulation of the nervous system. This machine designed by witness Druz is used at the present time in the Clinical Psychology Section of the Illinois Institute of Technology. Druz was also a member of Sigma Zi, which is a Research Scholastic Society of the equivalent of the Academic Fraternity of Phi Beta Kappa. Witness Druz was familiar in detail with the machine used by appellant and had seen the machine tested on various people eighty or ninety times and had tested the machine on himself, and that he personally had felt the effect or reaction of the stimulation produced by the machine. According to Druz, the machine was of excellent workmanship and was made of good material. Witness Druz had made tests on the very machine that appellant was using on the occasion of her alleged injury. Druz was familiar with the effect of stimulation produced by the machine on the human body. After de-

scribing the component parts of the machine, including transformers, the resister, the condenser, and other parts of the machine, as well as the turn-off switch, and after his testimony concerning his intimate familiarity with the machine in question, including the tests which had been made on the machine, Druz testified that the machine was safe for the use for which it was manufactured. When the machine is in use, the arms are caused to flex inward and relax outward. The Relax-A-Cizor machine, the very machine which appellant used, utilized power about 50 times less than a flashlight bulb consumes. When the machine is in use for three-quarters of a second, it is producing this current and then for three-quarters of a second, the current is off. The peak voltage produced by the machine existed for an infinitesimal amount of time and could not cause any contraction of the muscles. The average value of the current is only about 3 per cent of the peak voltage. The machine is under the safe maximum.

On cross-examination, Druz testified that he knew that there were electrocytes present in the lymph system of the body; that the time duration of a given amount of current has something to do with muscle contraction; that nerve fibres respond to current of much shorter duration than do muscle fibres; that some tissues are slow in action; others fast; a graded series of excitabilities may be found with the muscles at one extreme, and large nerve fibres at the other; that the greater number of amps that are applied to a muscle or fibre, the shorter the length of time it will take to excite that nerve or muscle fibre.

■ The competency of a witness to testify as an expert is addressed to the sound discretion of the trial court, whose decision on the evidence will not be disturbed on appeal except for palpable abuse. Dorsey Trailers, Inc. v. Foreman, 260 Ala. 141, 69 So.2d 459; Nash v. Nash, 38 Ala.App. 682, 94 So.2d 217, cert. denied, 266 Ala. 698, 94 So.2d 223.

The criterion for admission of expert testimony is that the witness by study, practice, experience or observation as to a particular subject or field should have acquired a knowledge beyond that of the average layman. Police & Fireman's Ins. Ass'n v. Mullins, 260 Ala. 173, 69 So.2d 261; Hicks v. State, 247 Ala. 439, 25 So.2d 139. We think the witness met the test.

. The witness had previously, on direct examination, without objection, testified that he was "familiar with the effect of the stimulation produced by this machine on the human body." We also note that immediately preceding his testimony that he did not know what this machine did to the muscle tissue, he was asked if he knew what this machine did to the muscles and his answer was: "I doubt if anybody does."

In Blakeney v. Alabama Power Co., 222 Ala. 394, 133 So. 16, it was held that, "A witness who, as a sheet metal worker, is shown to have experience with electric current every day for years, and frequent shock from contacts therewith, was competent to testify as an expert whether a current of 120 volts will kill a human being."

In Dorsey Trailers, Inc. v. Foreman, supra, we held that a safety inspector for the State could testify that the conditions under which the defendant had its trailers painted were unsafe for the employees doing the painting. The inspector was not a physician nor was it shown that he had any substantial knowledge of the working of the human body. But he was qualified as a safety inspector.

We find no reversible error in any of the argued assignments of error, and the judgment is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.