263 So.2d 656

**LOUISVILLE & NASHVILLE RAIL-
ROAD CO.**

v.

**Charles Webb VICKERY.**

**1 Div. 647.**

Supreme Court of Alabama.

June 8, 1972.

Hand, Arendall, Bedsole, Greaves & Johnston, and Jerry A. McDowell, Mobile, for appellant.

Cunningham, Bounds & Byrd, Mobile, for appellee.

Inge, Twitty, Duffy & Prince and John N. Leach, Jr., Mobile, for non-appealing defendant.

PER CURIAM.

In his amended complaint, Charles Webb Vickery sued Louisville & Nashville Railroad Company and Sperry Rail Service, a division of Automation Industries, Inc., to recover damages for personal injuries.

A jury of Mobile County rendered a verdict in favor of Vickery against L. & N. alone in the amount of $150,000. Judgment was in accord with the verdict.

After its motion for new trial was denied, L. & N. appealed to this court from the original judgment and from the judgment denying its motion for a new trial.

Vickery, a long-time employee of L. & N., was seriously injured on May 4, 1968, when a Sperry Rail Service test car, in which he was riding, struck a partially opened drawspan of L. & N.'s drawbridge over Bayou Sara in Mobile County.

As against L. & N., Vickery's suit is under the Federal Employers' Liability Act (45 U.S.C. § 51 et seq.). His complaint contains two counts, the first charging the defendant, L. & N., with negligence in the operation of the drawspan; and the second charging L. & N. with negligence in directing Vickery to assist in the movement of the Sperry test car when it knew or should have known that he was unfit, because of his training and experience, to assist in such movement.

L. & N. argues only three assignments of error.

Assignment of Error 19 reads:

"The Trial Court erred in overruling the defendant Louisville & Nashville Railroad Company's objection to a question propounded to R. E. Duncan, a witness for the plaintiff, as follows, (Tr. 202):

"Q. Do you have an opinion, Mr. Duncan, as to whether such action of the railroad in placing this man on that Sperry car was safe or unsafe practice?"

The question involved in Assignment 19 was merely introductory to the further examination of the witness. It was proper for the plaintiff to establish that the witness had an opinion in regard to the matter before asking him to state his opinion. The question called for a simple yes or no answer as to whether the witness did have an opinion. It was not reversible error to overrule the objection interposed thereto. See Grooms v. State, 228 Ala. 133, 152 So. 455; Hunt v. State, 248 Ala. 217, 27 So.2d 186; Stokley v. State, 254 Ala. 534, 49 So.2d 284; Empire Coal Co. v. Goodhue, 200 Ala. 265, 76 So. 31.

"This man," referred to in the question, was not properly identified in the question and if objection on that ground had been sustained we would not reverse. See Sanford v. State, 143 Ala. 78, 39 So. 370;

Strickland v. State, 151 Ala. 31, 44 So. 90. But that deficiency was not pointed out in the objection interposed.

We hold that Assignment 19 presents no cause for reversal of the judgment below. Assignment of Error 24 is as follows:

"The Trial Court erred in overruling defendant Louisville & Nashville Railroad Company's objection to a question propounded to R. E. Duncan, a witness for the plaintiff, as follows, (Tr. 211, 212):

"Q. Mr. Bounds: It's the very point, Mr. Duncan. Would you consider it safe practice to operate a train, a Sperry car or other comparable equipment under rules that govern the operation of motor cars?"

The question involved in Assignment 24, unlike the question involved in Assignment 19, does not call merely for a yes or no answer as to whether the witness had an opinion. It calls for a statement of the witness's view, his judgment or his opinion as to whether or not it was safe practice to operate the described machinery under certain rules.

Before consideration is given to the merits of Assignment 24, reference will be made to the evidence which tends to describe a "Sperry car" and which tends to define the "rules that govern the operation of motor cars," usually referred to as motor car rules.

A Sperry car is a large self-propelled machine. It weighs approximately seventy-two tons and is fifty-seven feet long.

It looks somewhat like a streetcar or a diesel locomotive. It can be operated at a speed as high as fifty miles an hour or higher. It has living quarters and a kitchen. Its crew can consist of as many as four of Sperry's employees—operator, assistant operator, supervisor and steward. It is equipped with "complicated equipment" used in the testing of rails, which is its function. Such cars are used by most, if not all, of the railroad companies in this country.

The actual movement of a Sperry car is handled by the Sperry Company operator, but such car is not moved over the tracks of a railroad company in the absence of an employee of that company who is supposed to keep the Sperry operator advised as to signals, if applicable, safe speed, curves and bridges, as well as right of movement under the specific orders given him by the railroad.

The employee so furnished by the railroad is referred to as a pilot and is apparently charged with responsibilities similar to those assumed by persons who conduct vessels into and out of a port.

Shortly prior to the accident, Vickery, the plaintiff, had been assigned by L. & N. to serve on board the Sperry car as a pilot.

A motor car is apparently the piece of equipment which has taken the place of the old handcar operated only by manpower. It is comparatively small and light. It can be lifted from and replaced on a track by its crew. Its maximum speed is thirty miles an hour and should be operated at such a speed that it can be stopped within one-half the range of vision.

Motor car rules do not apply to trains, locomotives and similar equipment but, in addition to motor cars, those rules apply to on-track equipment such as cranes, track tampers, and other machines used in connection with the repair and maintenance by the railroad of its tracks. Such equipment can be operated by a section foreman such as Vickery or some other qualified person in the maintenance-of-way department of the railroad. Engineers and conductors are not needed in the operation of such equipment.

The evidence tends to show that under motor car rules the operator of the equipment is not expected to comply with the signals which affect the movement of trains. He has the right to assume that for a given distance and time his movement will not be jeopardized by an oncoming or following train. Otherwise, the operator is on his own, so to speak. He must keep a lookout for other motor cars, switches,

curves and bridges, and is expected to restrict speed to the point where he can stop the moving equipment within one-half the range of his vision.

As heretofore indicated, trains manned by engineers, conductors, flagmen and brakemen are operated under entirely different rules.

With the foregoing evidentiary background, we come to consider L. & N.'s argument made in support of its Assignment of Error 24.

L. & N. says that the witness Duncan was not shown to have been qualified to express an opinion as an expert as to whether or not it was safe practice to operate a Sperry car under rules that govern the operation of motor cars.

The evidence shows that Duncan had been a locomotive engineer for the Southern Railway for thirty-four years, having operated during that period of time every type of locomotive from steam "on up to the present day modern diesel." He had operated over L. & N. tracks. He was familiar with Sperry test cars and their movement over the Southern lines in "this area." He accurately described the general characteristics of such cars. He was shown to be familiar with motor cars and compared them to Sperry test cars. In his view a Sperry test car is a train and should have a qualified pilot, a trained engineer or conductor, on board when it is moved over tracks unfamiliar to the Sperry operator. He served as such a pilot on many occasions. He was familiar with the difference between "a motor car lineup as opposed to some other type lineup," tantamount to a difference between motor car rules and train rules. He had examined the motor car rules of L. & N.

■ It is our view that the evidence last summarized·above was sufficient to justify the trial court's action in permitting the witness Duncan to testify as an expert in regard to the safe manner in which Sperry cars are or should be operated. The fact that his work had been with the Southern Railway and in its operating department, that is, as fireman and engineer rather than in the maintenance-of-way department, is not controlling.

It has been said that the examination of expert witnesses is, of necessity, largely discretionary with the trial court, and its decision as to competency will not be disturbed on appeal except for palpable abuse. Russell v. Relax-A-Cizor Sales. Inc., 274 Ala. 244, 147 So.2d 279, and cases cited; Alabama Consolidated Coal & Iron Co. v. Heald, Adm'r, 168 Ala. 626, 53 So. 162.

This court finds no abuse of the discretion in this instance.

L. & N. also contends that "the question to which the objection was lodged is invasive of the province of the Court and the jury, and is not a question that calls for expert testimony, even if Mr. Duncan was an expert."

■ The rule governing admissibility of expert opinion is that such evidence should not be admitted unless it is clear that the jurors themselves are not capable, from want of experience or knowledge of the subject, to draw correct conclusions from the facts proved. It is inadmissible on matters of common knowledge. Alabama Great Sou. R. R. Co. v. Bishop, 265 Ala. 118, 89 So.2d 738, and cases cited.

The strict question with regard to the testimony sought to be elicited from the witness Duncan is whether or not an average juror would be capable of forming a correct conclusion from the evidence adduced as to whether or not it is safe practice to operate a Sperry car under rules that govern the operation of motor cars. Certainly common knowledge cannot be said to afford an answer.

■ In this transcript there are a multitude of railroad terms which are beyond the understanding of the ordinary layman. Many of those terms had a·bearing on the issue as to whether or not it was a safe practice to operate a Sperry car under motor car rules. We do not believe that the explanations of those terms in the record

were or could have been sufficient to render a juror capable of drawing correct conclusions from the evidence adduced.

This court holds that the testimony given by the witness Duncan in response to the question involved in Assignment of Error 24 was properly admitted as the opinion of an expert. See Ellerbee v. Atlantic Coast Line R. Co., 258 Ala. 76, 61 So.2d 89; Tennessee Coal, I. & R. Co. v. Sizemore, 258 Ala. 344, 62 So.2d 459; Atlantic Coast Line R. Co. v. Hardwick, 239 Ala. 58, 193 So. 730; Marigold Coal, Inc., v. Thames, 274 Ala. 421, 149 So.2d 276. It follows that Assignment of Error 24 cannot work a reversal.

■ Submission was not had on appellee Vickery's motion to strike Assignments of Error 19 and 24 on the ground that the matters included in those assignments were not incorporated in L. & N.'s motion for a new trial. But the failure to submit on the motion is in no wise injurious to appellee in that it is clear that the motion is not well taken. As shown above, the appeal in this case was from the original judgment as well as from the judgment denying L. & N.'s motion for a new trial.

It has been held that rulings by the trial court on the admission and exclusion of evidence are reviewable on appeal from the final judgment even in the absence of a motion for a new trial. Dean v. Johnston, 281 Ala. 602, 206 So.2d 610; Popwell v. Shelby County, 272 Ala. 287, 130 So.2d 170; Travis v. Hubbard, 267 Ala. 670, 104 So.2d 712. In *Popwell, supra,* as in this case, the appeal was from the original judgment and the judgment overruling the motion for new trial. A different rule has been applied where the appeal is only from the judgment denying or overruling a motion for a new trial.

■ We come now to a consideration of Assignment of Error 12, which reads:

"The Trial Court erred in denying the defendant Louisville & Nashville Railroad Company's motion for New Trial, (Tr. 96–100, 110)."

It has been frequently observed by this court that such an assignment of error is a vicarious assignment of every well-stated ground of the motion for new trial which is adequately brought forth and argued in brief of appellant. Hall Motor Co., Inc., v. Furman, 285 Ala. 499, 234 So.2d 37, and cases cited; National Life & Acc. Ins. Co. v. Allen, 285 Ala. 551, 234 So.2d 567, and cases cited.

Two grounds of the motion for new trial are adequately argued in brief filed here on behalf of appellant, L. & N.

Ground 18 of said motion reads:

"For that the Court erred in refusing to give to the jury, at the request of the defendant Louisville & Nashville Railroad Company, Inc., before the jury retired, the following written charge, No. 2:

"'The Court charges the jury that if you believe the evidence in this case you cannot return a verdict in favor of the plaintiff and against the defendant Louisville & Nashville Railroad Company.'"

■ There was a general verdict in this case. Charge 2 had application to both counts of the complaint, hence it was properly refused if the evidence was sufficient to go to the jury on either count of the complaint. Martin v. Stoltenborg, 273 Ala. 456, 142 So.2d 257, and cases cited; Blackwell v. Alabama Power Co., 275 Ala. 123, 152 So.2d 670.

■ It has been held repeatedly that in reviewing the action of the trial court in refusing an affirmative instruction, this court reviews the evidence in the light most favorable to the plaintiff regardless of any view the court may have as to its weight, and this court must allow such reasonable inferences as the jury was free to draw, not inferences which this court may think the more probable. Mobile Press Register, Inc., v. Padgett, 285 Ala. 463, 233 So.2d 472, and cases cited; Britton v. Doehring, 286 Ala. 498, 242 So.2d 666; International Brotherhood of Teamsters, etc., v. Hatas,

etc., 287 Ala. 344, 252 So.2d 7; Birmingham Southern R. R. Co. v. Ball, 271 Ala. 563, 126 So.2d 206.

 In keeping with the decisions of the Supreme Court of the United States, this court has recognized that the affirmative charge in a F.E.L.A. case is properly given only where there is a complete absence of probative facts to support the plaintiff's claim of negligence on the part of the railroad. Atlantic Coast Line R. Co. v. McMoy, 261 Ala. 66, 73 So.2d 85, and cases cited; Bayles v. Louisville & N. R. Co., 272 Ala. 188, 129 So.2d 679; Louisville & Nashville R. Co. v. Crim, 273 Ala. 114, 136 So.2d 190; Birmingham Southern R. Co. v. Ball, supra; Southern Railway Co. v. Reeder, 281 Ala. 458, 204 So.2d 808.

 The gist of an action brought under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., is negligence of some sort by the railroad company or some employee of it in the scope of his duty, approximately caused the injury to plaintiff.

 The scintilla rule of evidence ordinarily applicable in Alabama practice does not apply in such a suit. Southern Ry. Co. v. Melton, 240 Ala. 244, 198 So. 588.

In Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 506–508, 77 S.Ct. 443, 448, 1 L.Ed.2d 493, 499–500, it is said in part as follows:

"Under this statute [F.E.L.A.] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. . . .

\* \* \* \* \* \*

"The Congress when adopting the law was particularly concerned that the issues whether there was employer fault and whether that fault played any part in the injury or death of the employee should be decided by the jury whenever fair-minded men could reach these conclusions on the evidence. . . ."

 The evidence tends to show that the cause of the accident was the fact that the Sperry car approached the drawbridge too fast. When the drawbridge came in view the Sperry car could not be stopped within the line of vision of any person on it. A person familiar with the track and the drawbridge and who was familiar with the braking or stopping potential of the Sperry car would have, in the exercise of due care, approached the drawbridge at a lower rate of speed. The officials of L. & N. who assigned Vickery to act as a pilot on the Sperry car had no reason to believe that he knew anything about its operation. In fact, they did not know the speed which well within the province of the jury to the Sperry car could attain or the distance within which it could be stopped at a given rate of speed.

In view of these facts, we think it was find that L. & N.'s supervisory employees negligently assigned Vickery to assist in the movement of the Sperry car.

L. & N. would invoke the principle that its negligence, if any, was not the proximate cause of the accident in that the Sperry car's operator, who was familiar with the operation of the car, was negligent in not approaching the bridge at a slower rate of speed. But this contention overlooks the fact that the evidence shows that the operator of the Sperry car was relying upon Vickery to keep him posted relative to the speed at which the Sperry car could be moved safely as it proceeded around curves and over bridges. Under

the circumstances of this case, we cannot say that as a matter of law the negligence of the Sperry car operator was the sole proximate cause of the accident.

In support of its contention that the trial court erred in refusing to give its requested Charge No. 2, L. & N. also says that "any negligence, on the part of the Appellant was not a proximate cause of the injury, because there was an intervening efficient proximate cause on the action of a third party," namely, Hancock, the Sperry Company's operator.

■ The many decisions of this court dealing with negligence as a proximate cause, when some agency has intervened and has been the immediate cause of the injury, hold the party guilty of negligence in the first instance is not responsible, unless at the time of the original negligence the act of the agency could have been reasonably foreseen. If the act of the intervening agency could have been reasonably foreseen, the causal chain is not broken. But if the injury results from an independent, intervening, efficient cause, not reasonably to be anticipated, to wit, the act of a third person, the negligence shown, if any, is not the proximate cause of the injury. Liberty National Life Ins. Co. v. Weldon, 267 Ala. 171, 100 So.2d 696, and cases cited.

■ L. & N.'s contention here under consideration cannot be approved for more than one reason. Under the evidence the jury was authorized to find that there was no negligence on the part of Hancock, the Sperry Company's operator of the car. The evidence tends to show that Hancock was completely unfamiliar with the track on which the Sperry car was moving and was relying entirely on Vickery, the L. & N. pilot, to keep him posted relative to the location of curves, bridges, switches and the like. Furthermore, under the evidence, the jury would have been authorized to conclude that any intervening negligence on the part of Hancock could have been rea-

sonably foreseen by L. & N.'s supervisory personnel.

The jury did not find that Sperry's operator, Hancock, was guilty of negligence. It did not return a verdict against Sperry, although it was a defendant in the case. Certain it is that under the evidence this court would not be justified in holding as a matter of law that the negligence of Hancock or that of any other Sperry employee was the sole proximate cause of the accident which resulted in Vickery's injuries.

We hold that the trial court did not err in refusing to give L. & N.'s written requested Charge No. 2.

The other ground of L. & N.'s motion for new trial which is argued in its brief reads:

"5. For that said verdict is contrary to the weight of the evidence in the case."

This is a good ground under our previous holdings. Sealy v. McElroy, 288 Ala. 93, 257 So.2d 340; Tucker v. Franklin, 285 Ala. 460, 233 So.2d 470.

■ The judgment of a trial court refusing to grant a new trial on the ground of the insufficiency of the evidence, or that the verdict is contrary to the evidence, will not be reversed unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence is so decided as to clearly convince the court that it is wrong and unjust. The court is not so convinced and holds that the trial court did not err in overruling Ground 5 of L. & N.'s motion for a new trial.

Since this court finds no error in the argued assignments of error, it follows that the judgment of the trial court is due to be affirmed. It is so ordered.

The foregoing opinion was prepared by LAWSON, Supernumerary Justice of this

Court, and was adopted by the Court as its opinion.

Affirmed.

HEFLIN, C. J., and MERRILL, COLEMAN, HARWOOD and MADDOX, JJ., concur.

