TYSON, Judge.
Lynn Berry was charged by indictment with the unlawful sale of marijuana, contrary to the provisions of Act No. 1407, Section 401(a), Acts of Alabama 1971, Regular Session.
The jury found the appellant “guilty as charged in the indictment”, and following a sentencing hearing, the appellant was sentenced to seven years’ imprisonment in the penitentiary.
Her retained counsel gave oral notice of appeal at this time. Thereafter, some confusion arose as to whether or not the appellant would be able to pay this counsel and subsequently this counsel requested the trial court to appoint counsel to perfect an appeal but this notice and the determination of the appellant’s indigency was not originally timely. This court made an earlier determination to this effect in an opinion Berry v. State, 395 So.2d 159 (Ala.Cr.App.1981). Thereafter, the appellant’s attorneys filed a Petition for Writ of Habeas Corpus in the United States District Court in Montgomery and that Honorable Court determined that the appellant had been indigent, in fact, as of the time of the original adjudication of her guilt and notice of appeal and directed that she be furnished with an “out of time appeal”. This appeal follows.
Allen Raymond Adair testified that he was employed by the Department of Forensic Science, at Montgomery, as a Criminologist. He testified that he examined some green plant material which had been left at his department office and determined that the same weighed 27.9 grams and in fact, the material was marijuana, having performed several tests thereon. Mr. Adair stated this material had been delivered to him by Mr. Thomas Hopen who worked *296 with him in the Department of Forensic Science.
Mr. Thomas Hopen testified that he received some green plant material on February 15, 1979, from an agent named Larry Williams, that he marked the date of receiving this material and delivered it to Mr. Adair for examination the following day.
Mr. Larry Williams, an ABC agent, testified he delivered some green plant material to the Department of Forensic Sciences to Mr. Hopen on February 15,1979. Mr. Williams further stated that he received this same green plant material on February 13, 1979, at 11:00 a.m., from fellow ABC agent, J.D. Ivey.
ABC Agent J.D. Ivey testified that he was working undercover in Montgomery, Alabama, during the months of December, 1978 and January and February, 1979. He testified his duties were with the Montgomery Police Department and that he made a purchase at an apartment in the Woodley Downs Apartments, No. 513 or 503, on February 12, 1979, at an apartment which he had been told had been rented by the District Attorney’s office.
Mr. Ivey stated that he met the appellant, Lynn Berry, at that time at the apartment at approximately 8:35 p.m. He stated that he purchased one ounce of marijuana for $35.00, handing her two $20 bills and receiving from her one $5 bill. Agent Ivey testified he delivered this marijuana to Agent Larry Williams the following day at the ABC warehouse at approximately 11:00 a.m. He testified the purchase of this green plant material took place in Montgomery County, Alabama.
On cross-examination, Agent Ivey denied having handed the money to one Larry Payne, a fellow officer, but insisted that he turned the monies over to the appellant, Lynn Berry, on the occasion of the purchase.
He testified he was aware that an additional purchase of marijuana had been made from her by Larry Payne at a different time and location.
The appellant, following the close of the State’s evidence, made a motion to quash the evidence and for a motion for a judgment of acquittal. These motions were overruled by the trial court.
James Gamble, a lieutenant with the Montgomery Police Department, testified he first met the appellant, Lynn Berry, when she was working as desk clerk at the Southwest Holiday Inn in Montgomery. He testified that from time to time she was most helpful in supplying information which ultimately led to arrests and convictions of several parties who were dealing in drugs in the Montgomery, Autauga and El-more County areas. He stated that he did not recall any conversation with her concerning any drug purchases at the Woodley Downs Apartments, nor had he authorized her to make any purchases or deal in any narcotics on behalf of the police department.
Charles Michael Armstrong, a former Montgomery police officer, testified that during 1978 and 1979 the appellant had worked as an informant and provided several bits of information which ultimately led to arrests and convictions in drug related cases in the Montgomery area. He did not recall any conversations, however, with Lynn Berry concerning a possible drug operation at the Woodley Downs Apartments complex. He specifically stated that he had not given her any permission whatever to attempt to sell or purchase narcotics or drugs.
David Green, a Montgomery police officer, testified that Lynn Berry had assisted the department for several years in providing information which ultimately led to convictions in drug cases. He further testified that he had not given her permission to sell or purchase drugs as an undercover agent for the department.
Lynn Berry testified that she lived in the Broadmoor Apartments in Montgomery and was currently employed at the Piknik Products as a secretary. She stated that she was divorced and the support of her six-year-old son.
*297 She recalled the events of February 12, 1979 and stated that she had gone to the Woodley Downs Apartments with one Tim Davis. She stated that a Tim Bodine was not there at the apartment at the time. She did testify that there was a Larry Payne, whose nickname was “Gaitor”, also there. She testified that J.D. Ivey had telephoned her and asked her to come over and in fact he asked her to have a meal with him and Mr. Payne that night. She stated she did not try to get in touch with David Green on the night in question, but she did try to get hold of Mike Armstrong and ask him to get in touch with one of the other officers, specifically a Nick Royal, who worked with the Sheriff’s Department. She testified that she went to the apartment and was seated in the dining room with the two parties Ivey and “Gaitor”. She stated that “Gaitor” or Payne, asked her where he could get some “coke or a bag.” She said that she told him that she did not know and that at that point Tim said that he could get one. She stated that she left and went by her brother’s apartment and again tried to call Mike Armstrong and told him they were trying to make a play. She stated that they were also talking about “a sawed-off shotgun that Tim had” and said that he would buy it and get it later on. She testified that when she returned and went into the living room some money did change hands, but she said that it was Larry Payne who handed the money over and that she herself did not receive any money, nor did she subsequently receive any part of the monies whatever. She stated that they had also called her on a later date again about a purchase. She said that a subsequent case was dismissed at preliminary by the trial judge. Ms. Berry stated that she had never received any money for drugs nor had she made any sales or dealt in any, other than to provide information to the Montgomery Police Department. She further stated that she had been employed at Piknik Products for over a year at the time of trial and had formerly worked at a jewelry store.
On cross-examination, she stated that she had not been paid for her work or assistance to the Montgomery Police Department but rather on occasion when she went with one of the officers as an undercover, she might have been provided with a meal, but that there were no funds involved.
I
The appellant asserts that the State failed to prove a prima facie case and that therefore her motion to exclude and motion for judgment of acquittal should have been granted.
The evidence as set forth above clearly presented a question for the jury and in light of this, we are of the opinion that the trial judge properly submitted this cause to the jury for their consideration, which determined the matter adversely to the appellant. We believe the trial judge’s action in this respect was correct. McCart v. State, 387 So.2d 232 (Ala.Cr.App.1980), cert. denied, 387 So.2d 237 (Ala.1980); Williams v. State, 409 So.2d 949 (Ala.Cr.App.1981), cert. denied, 409 So.2d 949 (Ala.1982).
II
Appellant contends that in one instance the trial court failed to properly rule on an objection made during trial.
The colloquy during which the alleged error occurs appears on record pages 24-25.
“Q And do you recall what the purpose of that trip was or what transpired?
“A I went over there to see if I could buy some more drugs on, you know, set up a larger deal. And I went in at — I don’t know, five, six, seven. And the time Bodine Hammer and Tim Davis was there and a couple of other dudes. And they ask me if I wanted speed. And one time they said they had three dime bags of “coke” that belonged to Lynn.
“MR. CLEVELAND: Objection to
[[Image here]]
“MR. CHANDLER: If he is going to ask the question ...
“THE COURT: Wait just a minute. Ask him a question.
*298 “MR. CLEVELAND: Would you ask him to be responsive to the questions, your Honor?
“THE COURT: Well, let’s ask him, first.
“Q Mr. Ivey, on several occasions after February the 15th, did you request Lynn Berry to sell you drugs?
“A I don’t know whether you say several. I would say, yeah, it probably was several.
“Q And did she refuse you ever time you requested her?
“A No. She said I called her about marijuana.
“Q That is not what I asked you.
“A No, sir.
“THE COURT: Answer his question.
“Q Now, the night that you were talking about on February 12, what role, if any, did Mr. Payne play in the purchase —Mr. Larry Payne?
“A Not the purchase. None that I know of.
“Q He had nothing whatsoever to do with it?
“A No, sir.
“Q It was not Mr. Larry Payne that transacted the purchase from Tim whatever his name is?
“A No, sir.
“Q It was not Larry Payne that gave the money to Tim whatever his name is?
“A No, sir. I gave the money to Lynn.
“Q How long was she over at the apartment, Mr. Ivey?
“A First time, I would say, ten or fifteen minutes; something like that. Not too long the second time.”
As may be seen in the above exchange, there was simply the words “objection to” made by counsel. Thereafter, there was no answer nor was there any further objection nor an adverse ruling by the trial court. This matter is fully covered in an opinion of this court, Kendricks v. State, 378 So.2d 1208 (Ala.Cr.App.1979) and authorities therein cited. In light of the objection hereinabove noted and the fact that there was no answer given nor an adverse ruling obtained, no matter is presented for this court’s review. Ken-dricks, supra.
Ill
The appellant next asserts that the trial court failed to give certain written requested charges and that such failure constituted reversible error. The appellant, however, failed to take exception to the trial court’s refusal to give each of these charges as is required by this court’s opinion in Allen v. State, 414 So.2d 989 (Ala.Cr.App.1981), affirmed 414 So.2d 998 (Ala.1982). This issue was not properly preserved for our review.
Moreover, the essential issues with reference to proof beyond a reasonable doubt and to a moral certainty, and the presumption of innocence, were all matters properly covered in the trial court’s oral charge to which no exception was taken. We find no error.
For the reasons shown, this case is due to be and the same is hereby affirmed.
AFFIRMED.
All the Judges concur.